**In re Edward LEMOS, Debtor.**

**Edward Lemos, Plaintiff,**

v.

**Bernie Rakozy, Defendant.**

Bankruptcy No. 98–00551.
Adversary No. 99–6173.

United States Bankruptcy Court,
D. Idaho.

Dec. 14, 1999.

Howard R. Foley, Foley & Freeman, Meridian, Idaho, for plaintiff.

Jed W. Manwaring, Evans, Keane, Boise, Idaho, for defendant.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Chief Judge.

### Background

In this adversary proceeding, Plaintiff Edward Lemos, a Chapter 7 debtor, seeks to establish that certain funds received after the filing of his bankruptcy petition through the federal Crop Loss Disaster Assistance Program ("CLDAP") are not property of his bankruptcy estate. The Defendant, Chapter 7 trustee, Bernie Rakozy, contends the money is property of the bankruptcy estate and should be distributed to creditors. A trial was conducted on October 14, 1999, and the matter was taken under advisement. The parties having filed briefs after trial, and the Court having duly considered the evidence, testimony, and the arguments of the parties, the following constitutes the Court's findings of fact and conclusions of law. Fed.R.Bankr.P. 7052.

### I. Facts

Plaintiff, a farmer, had grown wheat and onions during the past several years. These crops were federally insured and Plaintiff received crop insurance indemnity payments in 1994 (wheat), 1995 (wheat and onions), and 1996 (wheat) totaling $63,067.

Plaintiff filed for relief under Chapter 12 of the Bankruptcy Code on February 25, 1998. The case was converted to Chapter 7 on July 14, 1998, and Plaintiff received a discharge on November 9, 1998.

On October 21, 1998, Congress enacted Public Law 105–277 establishing the CLDAP, which provided cash benefits payable to farmers suffering crop losses during certain years. The legislation directed the Secretary of Agriculture to promulgate regulations governing applications for benefits under the program to be administered by local Farm Service Agency offices. Regulations were promulgated and adopted. *See* 7 C.F.R. §§ 1477.101 *et seq.*

On April 9, 1999, Plaintiff applied for disaster benefits under the multi-year portion of the CLDAP. To qualify, Plaintiff had to show that he had received crop loss indemnity payments in at least three of the previous five years. 7 C.F.R. § 1477.101. He did so, and Plaintiff's application for benefits was approved. The amount of his benefits was calculated by multiplying the total indemnity payments he had received over the previous five years by 25%, then reducing it by a national factor of .849. On June 21, 1999, a payment on Plaintiff's application in the amount of $13,386.00 was issued, but it was intercepted by Defendant as trustee of Plaintiff's bankruptcy estate. Plaintiff seeks to recover the funds from Defendant.

### II. Applicable Law

The parties disagree over whether the farm program benefit payment under these facts constitutes property of the bankruptcy estate. If the money is property of the bankruptcy estate, Defendant as trustee is entitled to possession of the funds to administer in the bankruptcy case. 11 U.S.C. § 542.

■ Under Section 541(a) of the Bankruptcy Code, property of the estate includes:

(1) ... [A]ll legal or equitable interests of the debtor in property as of the commencement of the case.... [and]

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

11 U.S.C. § 541(a)(1) and (6). The scope of the concept of "property of the estate" was intended by Congress to be extremely broad. *In re Shaw Construction*, 92 I.B.C.R. 90, 91 (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 367–68 (1977) and S.Rep. No. 989, 95th Cong., 2d Sess. 82–83 (1978)). See also *Monumental Life Insurance Co. v. Bibo, Inc. (In re Bibo)*, 200 B.R. 348, 350 (9th Cir. BAP 1996), citing *Harsh Investment Co. v. Bialac (In re Bialac)*, 712 F.2d 426 (9th Cir.1983) (Section 541 was intended to be "broad and all inclusive").

## III. Discussion

### A. Requests for Admissions

As a preliminary matter, Defendant argues that Plaintiff has judicially admitted certain facts as propounded in Requests for Admission served by Defendant on Plaintiff on August 10, 1999. Responses to these discovery requests were not served by Plaintiff until September 17, 1999. Defendant argues that the requests are deemed admitted pursuant to Federal Rule of Civil Procedure 36(a) as incorporated by Federal Rule of Bankruptcy Procedure 7036. Plaintiff moves for relief from the effect of the rule.

█ Plaintiff will be excused from the effect of his tardy discovery responses. Fed.R.Civ.P. 36(b). Defendant was not prejudiced at trial by Plaintiff's failure to timely respond to the requests. Moreover, it appears to the Court that, for the most part, the requests do not address issues of

fact, but require Plaintiff to concede certain conclusions of law. The Court declines to base its determination of the issues on any such "deemed admissions." *Id.*

### B. Property of the Estate Pursuant to Section 541(a)(1)

█ The legal issue presented by this case is whether crop disaster benefits paid on Plaintiff's account pursuant to legislation enacted and regulations adopted after the filing of Plaintiff's bankruptcy petition, but related to crop losses occurring pre-petition, should be included within the bankruptcy estate under 11 U.S.C. § 541(a)(1). As the debtor requesting the determination, Plaintiff has the burden of proving the disaster payments are not property of the estate. *Johnson v. Taxel (In re Johnson)*, 178 B.R. 216, 220–21 (9th Cir. BAP 1995) (debtor has burden of proving that payments received postpetition should be excluded from property of the estate under Section 541(a)).

The CLDAP required the Secretary of Agriculture to make disaster payments available to producers who had incurred specific crop losses. PL. 105–277; 7 U.S.C. § 1421, Subtitle A §§ 1101–1103. It was solely because Plaintiff had received crop insurance indemnity payments for losses incurred in his wheat and onion crops during 1994 through 1996 that he was eligible for benefits under the CLDAP. 7 C.F.R. § 1477.300.

In *Rau v. Ryerson*, 30 B.R. 541 (9th Cir. BAP 1983), aff'd. 739 F.2d 1423 (9th Cir. 1984), the court held that payments received pursuant to an employment contract which became due when the debtor's job was terminated eight months after filing for bankruptcy were property of the bankruptcy estate. The payments were based upon commissions earned during previous years. Citing *Segal v. Rochelle*, 382 U.S. 375, 380, 86 S.Ct. 511, 15 L.Ed.2d 428,[1] the

---

**1.** Although *Segal* was decided under the prior Bankruptcy Act, Congress clearly intended its holding to apply to Section 541(a) of the

Bankruptcy Code. "'The result of *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), is followed, and the right

court found that even though the right to payments under the termination agreement was contingent, it was " 'sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupt's ability to make an unencumbered fresh start,' " that the payments should be regarded as property of the bankruptcy estate.[2] See also *In re Buchanan*, 139 B.R. 721, 722–723 (Bankr.D.Idaho 1992) (following *Segal*, the Court held that an earned income tax credit is property of the estate).

This Court, following *Ryerson*, has also held that other contingent interests may be included as property of the estate. *In re Shaw Construction, Inc.*, 92 I.B.C.R. 90–91. In *Shaw*, a worker's compensation insurance dividend which was declared and received postpetition was found to be a contingent interest properly characterized as property of the bankruptcy estate. *Id.*

While these cases stand for the broad proposition that even contingent interests may constitute property of the estate pursuant to Section 541(a)(1), none of them involve the postpetition enactment of a federal program that gives rise to property of the estate. The only case the Court has been able to locate involving postpetition regulations is from the Alaska bankruptcy court which was recently asked to determine whether certain fishing quota rights were to be included as property of the estate. After first concluding that the fishing rights were in fact "property" under Alaska law, the court then concluded the fishing rights which had accrued due to certain prepetition qualifying events were property of the estate, despite the regulations having been enacted postpetition. *Battley v. Schmitz (In re Schmitz)*, 224 B.R. 117 (Bankr.D.Alaska 1998), sup-

plemented by 232 B.R. 173 (Bankr.D.Alaska 1999).

While the Alaska court gave as a basis for its decision the fact that the administrative process for promulgation of the regulations was in an advanced stage when the debtor filed for bankruptcy relief, the court also reasoned that the fishing quota rights were "so rooted in the debtor's prebankruptcy past that they should be included as property of the estate." *Id.* at 124 (citing *Segal v. Rochelle*, 382 U.S. 375, 380, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966)). Specifically, the court found that the qualifying events (i.e., fishing in previous years) had occurred prepetition, and no qualifying activities were required postpetition. *Id.* at 123.

■ Similarly, in this case Plaintiff became entitled to the CLDAP payments only as a result of qualifying events (i.e., growing and suffering qualifying losses as to certain crops) occurring before bankruptcy, rather than any significant event taking place after filing his bankruptcy petition. The scenario is a common one. Congress frequently and regularly enacts a variety of farm subsidy programs, including price supports, set-asides, and disaster relief, which change from year to year. The prospect of a federal program being adopted to compensate for farm losses in any given year may therefore be properly characterized as a contingent interest, which, though it may never vest if the program does not encompass a particular crop or a particular year, is property of the bankruptcy estate when it relates to prepetition crops.

---

to a refund is property of the estate.' " *In re Buchanan*, 139 B.R. 721, 722 (Bankr.D.Idaho 1992), quoting S.Rep. No. 989, 9th Cong., 2d Sess. 82 (1978). In *Segal*, a debtor's postpetition tax refund was held to be property of the estate.

**2.** There is some question whether analysis under the second prong of the test set forth by *Segal* is still required. (See *Johnson v. Taxel*,

178 B.R. 216, 218 (9th Cir. BAP 1995), holding that only the first prong of *Segal* is required after enactment of the Code.) However, without expressing any opinion regarding whether the second prong has continued validity, the Court concludes that given the nature of the CLDAP payments here, they are not entangled with the Plaintiff's ability to make a fresh start.

Additionally, it would be inequitable in these circumstances to allow Plaintiff to reclaim the funds. Plaintiff received a discharge in his bankruptcy case. Plaintiff admitted at trial that some discharged debts were prebankruptcy farm expenses. Allowing the Plaintiff to recover the CLDAP payments designed to compensate Plaintiff for his losses, while discharging debts he incurred while growing the qualifying crops, would give Plaintiff an unjustified windfall to the detriment of the same creditors who helped Plaintiff qualify for the benefits.

Therefore, even though the regulations implementing the CLDAP were promulgated postpetition, the Court finds the CLDAP payments resulted from activities and events so rooted in the Plaintiff's prebankruptcy past that the program payment is properly characterized under Section 541(a)(1) as property of the estate.

## B. Proceeds From Property of the Estate Pursuant to Section 541(a)(6)

In the alternative, Defendant contends that the benefit payments received under the CLDAP constitute "proceeds" for purposes of Section 541(a)(6). There are cases supporting this argument, but Plaintiff argues that these decisions are distinguishable because of differences in the method by which the benefits were calculated. Additionally, because the CLDAP had not yet been enacted, Plaintiff contends that no property nor "entitlement" to property existed as of the filing date for the Chapter 12 petition.

Defendant notes that the payment here was intended by Congress to supplement the indemnity payments previously received by Plaintiff which, in the opinion of Congress, did not fully compensate him for his crop losses. Because of this, Defendant argues that the benefits constitute "proceeds" of the prebankruptcy crops to be included as property of the bankruptcy estate, regardless of when the legislation was enacted.

The term "proceeds" is not used in Section 541(a) " 'in a confining sense, as defined in the Uniform Commercial Code, but is intended to be a broad term to encompass all proceeds of property of the estate.' " *In re Megamarket of Lexington, Inc.,* 207 B.R. 527, 532 n. 7 (Bankr.E.D.Ky. 1997) (quoting H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 368 (1977), *reprinted in* U.S.Code Cong. & Admin.News 1978, pp. 5963, 6324). The parties have not referenced, nor has the Court located in its own research, any decisional authority involving crop assistance benefits to which the debtor became entitled under a program established after bankruptcy. However, Plaintiff cites several cases which have discussed payments received under a variety of agricultural programs enacted prepetition.

The closest case is *Kelley v. Ring (In re Ring),* 169 B.R. 73 (Bankr.M.D.Ga.1993), aff'd. 160 B.R. 692 (M.D.Ga.1993), dealing with a crop disaster program enacted by Congress shortly before the debtor filed for bankruptcy relief. In concluding that the disaster payments received by the debtor postpetition were property of the estate pursuant to Section 541(a)(6), the Court observes:

> The purpose of the disaster payments is to compensate the Debtor for crop losses. Since the crops and their proceeds are property of the estate and the disaster payments are merely the substitute for the proceeds of the crops, then it logically follows that the disaster payments are also property of the estate.

*Id.* at 77. In *White v. U.S. (In re White),* 1989 WL 146417 (Bankr.N.D.Iowa 1989), payments calculated in a similar manner were also characterized as "proceeds" under Section 541(a)(6).

Although the farm program regulations in *Kelley* and *White* were enacted before the petition for bankruptcy relief was filed, the Court finds the courts' analysis instructive. It is indisputable that Congress intended the payments there and here as

additional compensation for the crops grown before bankruptcy.

Plaintiff attempts to distinguish these decisions because the payments were based upon deficiencies between the actual price received for the debtor's crop and a nationwide target price, rather than on previous indemnity payments. The differences noted by Plaintiff, in this Court's view, relate more to form than substance. The critical inquiry should not focus upon the method or formula under which the benefit payments were calculated, but rather on the activities to which the payments relate. Here, the crucial factor is that the CLDAP payments relate directly to the growing of the crops and the losses Plaintiff suffered in 1994 through 1996, prior to the filing of the bankruptcy petition. Whether the benefit payment was calculated with reference to crop prices expected versus received, or based upon the amount of prior crop insurance payments received, is not dispositive.

■ Furthermore, in the Ninth Circuit, farm subsidies in the form of deficiency payments or abandonment payments are "proceeds" under the Uniform Commercial Code. *Pombo v. Ulrich (In re Munger)*, 495 F.2d 511 (9th Cir.1974). See also *First State Bank of Abernathy (In re Nivens)*, 22 B.R. 287 (Bankr.N.D.Tex.1982); *Conagra, Inc. v. Farmers State Bank*, 237 Mich.App. 109, 602 N.W.2d 390 (1999). As previously noted, the term "proceeds" in Section 541(a)(6) was intended by Congress to encompass an even broader scope than under the U.C.C. Logically, the bankruptcy term would include farm program payments.

■ Having considered all the arguments and authorities, as an alternative basis for its holding, the Court concludes the disaster assistance payments, in the form of supplemental indemnity payments for prepetition crop losses, constitute "proceeds" within the meaning of Section 541(a)(6), to be included as property of the bankruptcy estate.

## IV. Conclusion

For the reasons set forth above, the Court concludes the benefit payments received under the CLDAP for crop losses incurred in 1994 through 1996 are properly characterized as property of the estate pursuant to Section 541(a)(1). In the alternative, the payments constitute "proceeds" within the meaning of Section 541(a)(6). Accordingly, Plaintiff is not entitled to return of the $13,386.00 in CLDAP payments. Defendant should administer the funds as part of the bankruptcy estate.

Counsel for Defendant shall promptly prepare and submit an appropriate form of order and judgment for entry by the Court.