In re Patrick M. NORVILLE, Traci L. Norville, Debtors.

**Mercantile Bank, Plaintiff,**

v.

**Patrick M. Norville and Traci L. Norville, Defendants.**

**Bankruptcy No. 99–71579.**
**Adversary No. 99–7181.**

United States Bankruptcy Court, C.D. Illinois.

April 27, 2000.

John S. Narmont, Springfield, IL, for debtors.

David R. Fines, Taylorville, IL, for Mercantile Bank.

Michael D. Clark, Peoria, IL, Chapter 12 Trustee.

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.

The issue before the Court is whether the Bank has a valid perfected security interest in a government disaster check issued by the United States Department of Agriculture Farm Assistance Agency which the Debtors received pursuant to the Crop Loss Disaster Assistance Program.

The Debtors, Patrick and Traci Norville, had an ongoing borrower/lender relationship with Mercantile Bank. The most recent renewal note was dated March 2, 1999, and was in the principal sum of $142,999.42. The Debtors' debt to the Bank was secured in part by a Security Agreement dated May 5, 1998. The Security Agreement described the collateral for the Debtors' indebtedness as follows:

All farm machinery and equipment now owned or hereafter acquired by Debtor, and all accessions to, and spare and repair parts, tools and equipment whether now owned or hereafter acquired.

All interest in farm products and crops now planted or growing, or hereinafter planted and growing, or hereinafter harvested, including all proceeds of sale from said farm products, or crops further including (to the maximum extent permitted by law) proceeds from any crop loans, payments, or subsidies paid or guaranteed by any governmental entity, agency, or subdivision with respect to said farm crops or farm products and further including all crops or farm products in storage now or hereinafter acquired and all general intangibles, accounts and inventory of the debtors.

Assignment of Crop Insurance and AMTA/USDA payments.

Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or to make possible the production of an agricultural commodity, subject to 7 C.F.R. part 1940, subpart G, exhibit M.

The Bank perfected its security interest by filing the appropriate financing statements.

On April 22, 1999, the United States Department of Agriculture Farm Service Agency issued a Producer Entitlement Report. This Report set forth the Debtors' projected disaster payment for 1998 single year losses pursuant to the Crop Loss Disaster Assistance Program. According to the Report, the Debtors had a projected disaster payment of $16,176 coming to them for their 1998 single year crop losses.

On May 5, 1999, the Debtors filed their petition pursuant to Chapter 12 of the Bankruptcy Code.

The Debtors received a government disaster check for $16,176 following the filing of the bankruptcy petition. Mr. Norville admitted at his meeting of creditors on June 4, 1999, that he had filed a claim with the Farm Service Agency for his 1998 crop loss. The Debtors and the Bank agreed that the Debtors' attorney would hold the check pending a determination of the Bank's lien on the check.

The Bank filed a Complaint for Turnover on November 8, 1998. The Bank seeks the turnover of the $16,176 government disaster check. The Debtors oppose turnover. The parties agree that there are no genuine issues of material fact and that the Court may resolve this adversary on summary judgment.

The Debtors argue that federal law preempts the assignment, by security agreement or other means, of disaster relief payments. They suggest that the anti-assignment clause of 7 C.F.R. § 1437.18 preempts Illinois secured transactions law which does not limit a creditor's ability to encumber government disaster payments, and they cite *Matter of Halls*, 79 B.R. 417, 419 (Bankr.S.D.Iowa 1987) in support of this proposition. The *Halls* case has been severely criticized and represents a distinctively minority position. *See In re Selzer*, 135 B.R. 417, 419 (D.Kan.1991); *In re Arnold*, 88 B.R. 917, 921 (Bankr.N.D.Iowa 1988); *In re George*, 119 B.R. 800, 802 (D.Kan.1990). A federal agency's power to preempt state law through regulations must be clearly delegated by Congress. Congress did not expressly empower the Farm Service Agency to promulgate regulations preempting state secured transactions laws. Therefore, the Debtors may not use 7 C.F.R. § 1437.18 to avoid the Bank's properly perfected security interest. *See In re Endicott*, 239 B.R. 529, 531 (Bankr.E.D.Ark.1999).

The Debtors next argue that the Bank's security interest was terminated by 11 U.S.C. § 552, which provides in pertinent part as follows:

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b)(1) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, or profits of such property, then such security interest extends to such proceeds, product, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law,

except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

The Debtors argue that their rights in the government disaster check were not acquired until after the commencement of the case, and, therefore, the check is not subject to the Bank's pre-petition security interest.

Under Illinois law, a creditor acquires a security interest in personal property when the following requirements are met:

(a) the collateral is in the possession of the secured party pursuant to agreement, the collateral is investment property and the secured party has control pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral....

(b) value has been given; and

(c) the debtor has acquired rights in the collateral.

810 ILCS 5/9–203(1)(a)–(c).

■■■ In this proceeding, the Debtors gave the bank a signed security agreement covering "proceeds from any crop loans, payments, or subsidies paid or guaranteed by any governmental entity, agency or subdivision ..." This is an adequate description of the government disaster check. *See In re Endicott, supra,* 239 B.R. at 531; *In re Waters,* 90 B.R. 946 (Bankr. N.D.Iowa 1988); *In re Sunberg,* 35 B.R. 777 (Bankr.S.D.Iowa 1983), *aff'd* 729 F.2d 561 (8th Cir.1984). It is undisputed that value was given to secure the indebtedness. Thus, the question is whether the Debtors had sufficient rights in the government disaster check for the security interest of the Bank to attach pursuant to § 9–203. More specifically, the issue is whether the Bank's security interest attached pre-petition or post-petition. If the check is proceeds of post-petition value, then § 552 cuts off the Bank's lien. However, if the check is proceeds of pre-petition value, then the Bank's lien is valid.

*See In re SRJ Enterprises, Inc.,* 150 B.R. 933, 935–36 (Bankr.N.D.Ill.1993).

The Debtors argue that the government disaster check is post-petition value because the Debtors did not have a right to the check until after an application was submitted to the Farm Service Administration. The Debtors submitted their application post-petition. Accordingly, the Debtors maintain that the check is free and clear of the Bank's lien.

The Bank argues that the Debtors had a legally enforceable right to the check pre-petition because the Crop Loss Disaster Assistance Program was in place pre-petition. The Bank maintains that this was a sufficient right under the Illinois Commercial Code for its security interest to attach.

The Court agrees with the Bank. The Debtors were eligible to participate in the Crop Loss Disaster Assistance Program prior to the commencement of the bankruptcy case. Indeed, prior to filing their bankruptcy petition, the Debtors received a Producer Entitlement Report which set forth exactly how much they were due for their 1998 crop losses. Thus, the Debtors had a pre-petition right to the government disaster check, and this was a sufficient proprietary interest for attachment to occur post-petition.

*In re Lesmeister,* 242 B.R. 920, 926 (Bankr.D.N.D.1999) reached a similar conclusion with regard to payments under the Crop Loss Disaster Assistance Program:

It is enough for attachment if the events giving rise to a claim or right of action have come into existence ... They were farmers who had suffered a loss from drought and had a right to payments under the program the moment the Crop Loss Disaster Assistance Program became effective. This right was a proprietary interest sufficient for attachment to occur at that time. Hence, Ag Acceptance's security interest in government payments attached on that date.

The Debtors' argument that they did not have a right to the government disaster

check until after an application was filed with the Farm Service Agency is not persuasive.

Relying on the unpublished opinion of *In re Bates*, Bankr.5–88–287 (Bankr.Minn. 1990), the *Lesmeister* court compared the right to disaster payments to a right of action for damages not yet put into suit. 242 B.R. at 924. The *Lesmeister* court found that the Debtor's right to a disaster payment was "best characterized as a prepetition right of action—an unliquidated chose in action." 242 B.R. at 925. Here, the Crop Loss Disaster Assistance Program was in place, the Debtors were eligible to participate in the program, and the Debtors suffered a crop disaster. All of these events occurred pre-petition. All that remained to be done post-petition was the filing of the application for the disaster payment. The Court agrees with *Lesmeister* and *Bates* that this is akin to a cause of action which occurred pre-petition but for which suit was not filed until post-petition. Such an action would unquestionably be an asset of the bankruptcy estate. *Lawrence v. Jackson Mack Sales, Inc.*, 837 F.Supp. 771, 779 (S.D.Miss.1992), *aff'd* 42 F.3d 642, 1994 WL 708701 (5th Cir.1994). Similarly, the Court finds that the Debtors had a sufficient interest in the government disaster check for the Bank's security interest to attach pre-petition. The application for the check need not be formally filed in order for the Debtors to have an interest in it; their right to the check accrued pre-petition.

For the foregoing reasons, summary judgment is granted in favor of the Plaintiff, Mercantile Bank, and against the Defendants, Patrick and Traci Norville as to Count I of the Amended Complaint. The Defendants are directed to turn over to the Plaintiff the Crop Loss Disaster Assistance Program payment in the amount of $16,176.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.