# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2758

_____

| | | |
|---|---|---|
| In re:  Janet Lynn Parsons, | * | |
| | * | |
| Debtor, | * | |
| ---------------------------------- | * | |
| Janet Lynn Parsons, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | Bankruptcy Appellate Panel |
| | * | for the Eighth Circuit |
| Union Planters Bank; | * | |
| | * | |
| Fred C. Moon, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  December 27, 2001

Filed:  February 11, 2002
_____

Before McMILLIAN, MORRIS SHEPPARD ARNOLD, and BYE, Circuit Judges.
_____

McMILLIAN, Circuit Judge.

Janet Lynn Parsons appeals from the final order entered by the Bankruptcy Appellate Panel (BAP), affirming the bankruptcy court's[1] findings that real estate commissions paid to her after her bankruptcy filing belonged to the bankruptcy estate, and that she was entitled to exempt from the estate as wages only 9.7% of the commissions. For reversal, Parsons argues (1) the post-petition services she rendered were indispensable to the closing of the subject real estate contracts, and thus the resulting commissions should have been excluded under 11 U.S.C. § 541(a)(6); (2) if the commissions were not excludable under § 541(a)(6), they were entirely exempt under Mo. Rev. Stat. § 525.030 (2000) because they were all paid after the bankruptcy filing; and (3) even if the commissions were subject to garnishment under § 525.030 and thus were not entirely exempt, 75% of them--not 9.7%--should have been exempt. For the reasons discussed below, we affirm the judgment of the bankruptcy appellate panel.

At the relevant time, Parsons was an independent contractor with Re/Max. Pursuant to an agreement, Re/Max received a 5% broker-service fee for each sales contract that Parsons or her real estate team negotiated. The fee was deducted from each earned commission at the time it was paid; Re/Max also retained from commission checks any sums past due for other services, such as administrative expenses, fees, and insurance. Parsons used most of her commission checks to pay business expenses. She netted $4,946 monthly.

When Parsons filed for bankruptcy, she had fifteen sales contracts for which she had not yet been paid a commission. These contracts generated $61,884 in sales commissions, but because Parsons owed Re/Max $22,992, Re/Max paid her the difference, $38,892, post-petition. Parsons claimed as exempt on her bankruptcy schedule 75% of the $38,892. The fifteen contracts were all signed prior to the

---

[1]The Honorable Arthur B. Federman, Chief Judge, United States Bankruptcy Court for the Western District of Missouri.

bankruptcy filing, and all but two were closed after the filing. Parsons and her team worked hard to ensure that all sales closed by scheduling inspections, applying for title work, ensuring that buyers were qualified, and negotiating contract changes between buyers and sellers. According to Parsons, if the team had not performed these post-contract functions, half of the sales would not have closed. Under the listing agreement Parsons used, if a broker produced a buyer who was ready, willing, and able to purchase the property on the listed terms or other terms acceptable to the owner, or if the owner sold the property to anyone while the listing agreement was in effect, then the owner would pay the broker at closing either a negotiated fee or 7% of the sale price.

The bankruptcy trustee and Parsons disputed whether the $38,892 was property of the bankruptcy estate or was exempt as wages. The bankruptcy court found that the sales commissions were earned pre-petition and thus were property of the estate. The court also found that Parsons was not entitled to exempt 75% of the commissions paid to her agency (as she contended she was entitled to do under Missouri's garnishment statute), because she had not personally performed all of the services that resulted in the commissions. Instead, the court allowed her to exempt $4,946 of the commissions, as that figure represented how she had valued her average monthly services on her bankruptcy schedules. The BAP affirmed, and this appeal ensued.

We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. See In re Papio Keno Club, Inc., 262 F.3d 725, 728-29 (8th Cir. 2001). Whether property is included in the bankruptcy estate is a question of law. See In re Cent. Ark. Broad. Co., 68 F.3d 213, 214 (8th Cir. 1995) (per curiam).

We first agree with the bankruptcy court that the commissions were earned pre-petition and thus were property of the bankruptcy estate. Property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the

commencement of the case." See 11 U.S.C. § 541(a)(1). In Missouri, a broker earns her commission when she produces a buyer who is ready, willing, and able to buy on terms specified by the seller, whether or not the sale is completed; the parties may vary the seller's duty to pay the commission by express agreement within the listing contract. See Dark v. MRO Mid-Atlantic Corp., 876 S.W.2d 714, 716 (Mo. Ct. App. 1994). Here, the fifteen subject contracts were all signed prior to the bankruptcy filing, and there was no evidence that either the relevant listing agreements or the sales contracts made payment of the commissions contingent on closing or on the realtor's continued provision of services after procuring a buyer. See In re Tully, 202 B.R. 481, 483-84 (B.A.P. 9th Cir. 1996) (where commission was earned when broker located ready, willing, and able buyer, commission was pre-petition earning even though closing took place post-petition).

Next, we reject Parsons's argument that her post-petition services rendered the commissions excludable from the bankruptcy estate under § 541(a)(6) (earnings from services performed by individual debtor after commencement of bankruptcy case are excluded). Parsons failed to present evidence that the contract terms were altered by post-petition events so as to alter her protectable interest in receiving the commissions. Cf. In re Brandon, 184 B.R. 157, 159-60 (Bankr. N.D. Fla. 1995) (addenda to real estate contracts did not destroy original contract that was accepted by sellers pre-petition and that gave rise to debtors' right to commission). We find inapposite the cases Parsons cites in support of her theory, for in those cases the debtor's receipt of commissions was contingent upon the debtor's continuing obligation to perform services post-petition. See Sharp v. Dery, 253 B.R. 204, 208 (Bankr. E.D. Mich. 2000); In re Zahneis, 78 B.R. 504, 505-06 (Bankr. S.D. Ohio 1987); In re Hodgson, 54 B.R. 688, 690 (Bankr. W.D. Wis. 1985).

Parsons also argues that, because the commissions had not actually been paid when she filed for bankruptcy, the commissions were not subject to garnishment

under Mo. Rev. Stat. § 525.030 (and thus were exempt from the bankruptcy estate).[2] We disagree. Section 525.030 includes, as earnings subject to garnishment, wages or earnings owing to the garnishee. Because the fifteen contracts were signed pre-petition, Parsons had a legally protectable interest at that time in receiving the commissions. Cf. In re Jess, 169 F.3d 1204, 1208 (9th Cir. 1999) (lawyer had interest in contingency fee because of pre-petition work on case; interest thus was property of estate under 11 U.S.C. § 541(a)(1)).

Finally, we cannot find fault with the bankruptcy court's exemption of 9.7% of the commissions as compensation for Parsons's post-petition personal services, given Parsons's lack of evidence showing that a different percentage was attributable to her personal services. See Gerry Elson Agency, Inc. v. Muck, 509 S.W.2d 750, 753 (Mo. Ct. App. 1974) (sole criteria for determining whether earnings exemption applies is whether earnings represent compensation for personal services).

Accordingly, we affirm the judgment of the bankruptcy appellate panel.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[2]Under federal and state law, the Missouri garnishment statute provides a basis for exempting property from the bankruptcy estate. See 11 U.S.C. § 522; Mo. Rev. Stat. § 513.427 (2000).