**In re FARMPRO SERVICES, INC., Plaintiff/Appellant,**

v.

**William S. BROWN and Gayle Brown, and WSB Trucking, Defendants/Appellees,**

**Ag Acceptance Corporation, Intervenor/Appellee.**

**No. CIV. A1–96–118.**

United States District Court, D. North Dakota, Northeastern Division.

April 22, 2002.

Roger James Minch, Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, ND, for Plaintiff.

David L. Johnson, McNair, Larson & Carlson, Ltd., Fargo, ND, for Defendants.

## MEMORANDUM OF DECISION

WEBB, Chief Judge.

### I. Introduction

FarmPro Services, Inc. ("FarmPro") appeals from an Order and Memorandum entered September 3, 2001 and a Judgment entered on the same day by the Bankruptcy Court for the District of North Dakota. In the aforementioned Memorandum and Order, the bankruptcy court held that the debtors' crop disaster relief payments were subject to the security interests of Ag Acceptance Corporation ("Ag Acceptance") and FarmPro, and it determined that Ag Acceptance held a first priority lien in these payments. FarmPro has elected to have this Court hear the appeal instead of the Bankruptcy Appellate Panel ("BAP"). *See* 28 U.S.C. § 158(c)(1)(A). For reversal, FarmPro essentially argues that the bankruptcy court erred by determining priorities as between Ag Acceptance and itself when the issue of priorities was not directly in issue.

The debtors, William S. Brown and Gayle Brown, have also appealed the September 3, 2001 judgment entered by the bankruptcy court. The Browns originally appealed this judgment to BAP. However, BAP dismissed the appeal and directed the bankruptcy court to transmit the case to this Court. On appeal, the Browns argue that the bankruptcy court erred by determining that the disaster payments were subject to the security interests of FarmPro and Ag Acceptance when the debtors' rights to those payments arose post-petition.

For the following reasons, the September 3, 2001 Memorandum and Order and Judgment of the bankruptcy court are AFFIRMED.

### II. Factual background

On February 18, 1999, the Browns filed a chapter 12 bankruptcy petition. In April 1999, while this case was pending, the Browns borrowed money in the form an operating loan from Ag Acceptance. In exchange for the operating loan, Ag Acceptance took a security interest in, *inter alia,* existing and future crops, government agricultural program payments, and their proceeds. Ag Acceptance perfected its security interest by filing a financing statement on May 17, 1999.

On May 17, 2000, the Browns received an operating loan from FarmPro. On June 2, 2000, the bankruptcy court approved this operating loan and authorized FarmPro to take a security interest in, *inter alia,* existing and future crops, government agricultural program payments, and their proceeds. However, in its order, the bankruptcy court specifically stated that "[a]ny security interest granted in favor of FarmPro Services under the terms of this Order shall be secondary to any previously granted security interest to Ag Acceptance Corporation covering the same security." This security interest was perfected on June 12, 2000, when FarmPro filed a financing statement.

On September 29, 2000, the Browns filed a chapter 13 bankruptcy petition. On December 29, 2000, they converted their case to a chapter 11; on June 4, 2001, they converted it again, this time to a Chapter 12. Meanwhile, on October 28, 2000, Congress appropriated funds for disaster relief payment for the 2000 crop year. For this reason, in July of 2001, the Browns were issued two checks totaling $80,000 from the Department of Agriculture. All parties now lay claim to these payments.

## III. Procedural background

In order to determine who had a right to the $80,000, the parties commenced two adversary proceedings in the underlying bankruptcy case. In the first proceeding, adversary no. 01 7031, FarmPro filed a complaint against the debtors and WSB Trucking to determine whether it had a first priority lien in the debtor's 2000 crop disaster program payments. In the second proceeding, adversary no. 01–7037, the debtors filed a complaint against Ag Acceptance to determine the validity of the claim of Ag Acceptance to the debtors' 2000 crop disaster program payments.

There has never been any formal consolidation or joinder of the two adversary proceedings in the bankruptcy court. The bankruptcy court consolidated the adversary proceedings for decision, but it entered two separate judgments. In its consolidated decision, the bankruptcy court determined that: (1) Ag Acceptance and FarmPro had security interests in the disaster payments, notwithstanding the filing of the bankruptcy petition; and (2) as between them, Ag Acceptance had a first priority lien in the disaster payments.

Shortly after the consolidated decision, on September 13, 2001, FarmPro filed a motion to alter or amend the order and judgment. The next day, the debtors appealed to BAP. On October 12, 2001, the bankruptcy court denied FarmPro's motion to alter or amend. Consequently, on November 13, 2001, FarmPro appealed to this Court. On February 15, 2002, BAP dismissed the debtors' appeal, holding that the filing of FarmPro's appeal to this Court divested it of jurisdiction. BAP thus directed that the appeal be returned to the clerk of the bankruptcy court for transmission to this Court.

In its appeal to this Court, FarmPro only appeals from adversary no. 01–7031. Since Ag Acceptance was not a party to 01–7031, this Court entered an order allowing it to intervene in this appeal. The Court also instructed the parties to submit supplemental briefing to the Court on the substantive issues, since a substantial portion of the parties' submitted briefs were dedicated to addressing the procedural difficulties in this case.

## IV. Discussion

The bankruptcy court's factual findings are reviewed for clear error, and its conclusions of law are reviewed de novo. *In re Parsons,* 280 F.3d 1185, 1188 (8th Cir.2002). There are two issues before this Court: (1) Whether the debtor's 2000 crop disaster payments are included in the property of the bankruptcy estate within the meaning of 11 U.S.C. § 541(a)(6); and (2) whether Ag Acceptance Corporation's security interest in these payments is first in priority. Both of these inquiries are questions of law. *Id.; In re Patterson,* 139 B.R. 229, 231 (9th Cir. BAP 1992). Accordingly, the Court will conduct a de novo review of the bankruptcy court's conclusions on these issues. *In re Parsons,* 280 F.3d at 1188.

A. Whether the disaster payments are property of the bankruptcy estate within the meaning of 11 U.S.C. § 541(a)(6)

The debtors argue that the disaster payments are not part of the bankruptcy

estate and thus are not subject to the pre-petition liens of Ag Acceptance and Farm-Pro. Under the Bankruptcy Code, property of the bankruptcy estate includes, *inter alia*, "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1), and "proceeds ... of the estate," 11 U.S.C. § 541(a)(6). Section 552 provides that a creditor's lien acquired by a pre-petition security agreement may extend to post-petition proceeds of secured property if the security agreement extends to proceeds of such property.

Two cases specifically discuss the issue of how crop disaster benefits are to be classified under these statutes. *In re Vote*, 261 B.R. 439 (8th Cir. BAP 2001), is a case in which BAP held that disaster relief payments do not constitute property of the estate under section 541(a)(1). In *In re Lemos*, 243 B.R. 96 (Bankr.D.Idaho 1999), a case decided before *Vote*, the court determined that agricultural program payments are proceeds of the bankruptcy estate, relying not on 541(a)(1), but rather on 541(a)(6). In the present case, the bankruptcy court relied on these two cases, finding that while *Vote* mandates that such payments do not constitute property of the estate under 541(a)(1), *Lemos* indicates that such property constitutes proceeds of the estate under 541(a)(6), and thus the creditors' security interests extend to these proceeds.

The debtors agree with the bankruptcy court's reliance on *Vote*, but they dispute the bankruptcy court's reliance on *Lemos*, arguing that: (1) it is not applicable because *Vote* is now the controlling law in the Eighth Circuit; and (2) in *Lemos*, the rights to the payments arose pre-petition rather than post-petition, as they do here. The debtors first argument, that *Lemos* is no longer applicable, is incorrect. The Court agrees with the bankruptcy court's analysis and finds that the two cases are complementary and may be read together to form one rule. The panel in *Vote* neither explicitly nor implicitly declined to follow the decision in *Lemos* in which the court held that crop disaster benefits constitute proceeds under 541(a)(6). In fact, the panel in *Vote* explicitly decided not to address the issue of whether the crop disaster benefits constituted proceeds, since the bankruptcy trustee neglected to address the issue in the bankruptcy court. Rather, the panel limited its holding to a determination that the crop disaster benefits did not constitute property of the estate under 541(a)(1), since the rights to the payments arose post-petition. Thus, the Court finds *Lemos* does not conflict with *Vote*, and, accordingly, *Lemos* is instructive in the present case.

The debtors second argument attempts to distinguish away *Lemos*. They argue that since the agricultural payments in that case arose pre-petition, then the case is inapplicable to the present case where the rights to the payments arose post-petition. This is, however, a distinction that does not matter here. The *Lemos* court's determination that the program payments were proceeds did not turn on when the rights to the payments arose. Instead, the court's characterization of the payments as proceeds was based on the nature of the payments. Thus, *Lemos* is directly applicable here. The Court finds the decision in *Lemos*, in which the court determined crop disaster benefits to be proceeds, to be sound and well-reasoned, and the Court hereby adopts this decision and the reasoning that precedes its decision. Accordingly, the Court finds correct the judgment of the bankruptcy court decreeing that the bankruptcy filing did not defeat the security interests of the creditors in the crop disaster payments.

B. Whether Ag Acceptance Corporation has a first priority security interest in the disaster payments

FarmPro argues that the bankruptcy court erred when it decided the issue of priority as between it and Ag Acceptance; FarmPro argues that this issue was never before the bankruptcy court and thus contends that none of the information necessary for the bankruptcy court to properly determine priorities was before it. The Court, however, finds that the issue of priorities as between the debtors, Farm-Pro, and Ag Acceptance was directly in issue. Indeed, FarmPro brought the issue of priorities to the attention of the bankruptcy court by filing an adversary proceeding in which it requested that the bankruptcy court find that FarmPro had a first priority in the debtors' 2000 crop disaster program payment. That the bankruptcy court would need to determine the relative priorities of all creditors to determine whether FarmPro had a first priority is axiomatic.

At the oral argument before this court, FarmPro's attorney stated that he is convinced that the bankruptcy court made a mistake in its September 3, 2000 Order granting Ag Acceptance first priority in the crop disaster benefits. As support for this position, FarmPro indicated that in a hearing prior to June 2, 2000, the bankruptcy judge made a comment indicating that FarmPro would have a superior interest in the 2000 crops. By this argument, FarmPro is essentially asking this Court to: (1) ignore the bankruptcy court's June 2, 2000 order that specifically grants Ag Acceptance a superior interest; (2) ignore the court's September 3, 2001 order that specifically reaffirms its June 2, 2000 Order; and (3) ignore the court's October 12, 2001 order that, again, specifically reaffirms its June 2, 2000 order. Rather, FarmPro would have the Court focus all of its attention on a transcript of a hearing, which was held prior to the bankruptcy court's June 2, 2000 order. This the Court will not do, especially since this transcript does not necessarily support FarmPro's position.

The bankruptcy court entered the June 2, 2000 order, authorizing interim credit, pursuant to a stipulation entered into between Ag Acceptance and the debtors. While FarmPro was not a party to the stipulation, presumably, it relied on this order to make the operating loan to the debtors. The Court thus rejects Farm-Pro's position that the bankruptcy court mistakenly granted a first priority security interest to Ag Acceptance, given that: (1) FarmPro implicitly agreed to the language in the June 2, 2000 order by extending an operating loan to the debtors, and (2) the bankruptcy court has explicitly reaffirmed its June 2, 2000 order several times.

Ultimately "it is the appellant's burden to demonstrate the merits of [its] appeal." *In re Webb,* 212 B.R. 320, 322 n. 1 (8th Cir. BAP 1997). While FarmPro generally attacks the decision making process of the bankruptcy court, FarmPro essentially has provided no specific facts or law that would require reversal of the bankruptcy court's determination of priorities. Nonetheless, the Court will independently review the conclusions of law made by the bankruptcy court.

■ Generally, the first to file or otherwise perfect a security interest maintains a superior claim among conflicting security interests. N.D. Cent.Code § 41–09–33(5). Ag Acceptance perfected its security interest first, and FarmPro does not seem to dispute this point. Thus, Ag Acceptance has a first priority in the crop disaster benefits unless one of the exceptions set forth in section 41–09–33 of the North Dakota Century Code applies.

During oral argument and in its briefs, FarmPro mentions that sections 41–09–33(2) and 41–09–33(4) are potentially applicable. Section 41–09–33(4) states that "a perfected security interest in crops for new value given to enable the debtor to produce the crops during the production season and given not more than three months before the crops become growing crops by planting or otherwise takes priority over an earlier perfected security interest to the extent that such earlier interest secures obligations due more than six months before the crops become growing crops by planting or otherwise." As Ag Acceptance correctly explains, this subsection does not apply to the facts here because the promissory note of Ag Acceptance become due on January 15, 2000, which is less than six months before the 2000 crops were planted. Thus, the facts of the present case do not fall within the purview of 41–09–33(2).

■ Moreover, the crop disaster payments are not "crops." Rather, they are government agricultural payments for which Ag Acceptance has expressly reserved a security interest. Even if this Court were to construe 41–09–33(2), which is a codification of the Uniform Commercial Code § 9–312, as including proceeds of crops, FarmPro would still not prevail. The definition of proceeds under the UCC is much narrower than the definition of proceeds under the Bankruptcy Code. *American Bankers Ins. Co. v. Maness*, 101 F.3d 358, 363 (4th Cir.1996). Under the Bankruptcy Code, the term proceeds is to be used in its broadest sense. *Id.* Contrarily, the definition of proceeds under the UCC is limited to that which "is received upon the sale, exchange, collection, or other disposition of the collateral or proceeds." N.D. Cent.Code § 41–09–27 (codification of UCC § 9–306). Here, the crop disaster payments were not received as a result of the sale, exchange, collection

or disposition of the crops. Thus, the crop disaster payments do not fall within the definition of proceeds under the UCC, and section 41–09–33(2) does not apply.

■ Likewise, 41–09–33(4), which provides a security interest to purchase money security interests (PMSI), does not apply to the facts here. FarmPro's security agreement did not create a PMSI in the crop disaster payments; it created a PMSI, if it all, only in the 2000 crops.

■ FarmPro also attempts to argue that Ag Acceptance's security interest is faulty under section 35–05–01.1 of the North Dakota Century Code. This section provides that "[a] security interest upon crops attaches only to the crop next maturing after the delivery of the security agreement." As with 41–09–33(2), this section only applies to crops. And, again, if this section were to apply to proceeds, UCC's narrow definition of proceeds would not include crop disaster payments. This section thus does not preclude a superior interest by Ag Acceptance in the crop disaster payments. Therefore, none of the exceptions to the general rule that the first to file or perfect applies here, and the Court finds correct the bankruptcy court's conclusion that since Ag Acceptance perfected its security interest first, it has the superior interest in the crop disaster payments.

## V. Conclusion

For the reasons explained above, the September 3, 2001 Judgment and Memorandum and Order of the Bankruptcy Court for the District of North Dakota are AFFIRMED. The motion by Ag Acceptance to strike portions of the Appendix of Plaintiff/Appellant, FarmPro Services is DENIED AS MOOT (doc. # 14).