In re Ricky W. BRACEWELL, Debtor.

Walter W. Kelley, Movant,

v.

Ricky W. Bracewell, Respondent

No. 02–60546.

United States Bankruptcy Court,
M.D. Georgia,
Thomasville Division.

May 20, 2004.

Shelba D. Sellers, Sellers & Mitchell, Allen H. Olson, Thomasville, GA, for Debtor.

Kelley, Lovett & Mullis, P.C., Albany, GA, for trustee.

## INTRODUCTION

JOHN T. LANEY, III, Bankruptcy Judge.

On April 5, 2004, Chapter 7 Trustee Walter W. Kelley ("Movant") filed a Motion to Determine Whether Crop Disaster Payment is Property of the Estate ("Motion") in the above captioned bankruptcy case of Ricky W. Bracewell ("Respondent"), along with a Stipulation of Facts and a brief memorandum in support his Motion. At the parties' request, no hearing was scheduled. Upon Respondent's brief and Movant's reply brief being filed with the Court, the Court took the matter under advisement. The Court has considered the stipulated facts, the parties' briefs, and the applicable statutory and case law. Based on the reasons set forth in this Memorandum Opinion, the Court finds in favor of Movant and holds that the disaster payment in dispute is property of Respondent's bankruptcy estate.

## STIPULATED FACTS

According to the Stipulated Facts submitted by the parties, Respondent planted approximately 223 acres of seed wheat in November 2000. Respondent planted approximately 374 acres of seed cotton in May 2001. Respondent used regular farming practices to grow the crops to harvest. During 2001, Respondent's crops were subjected to drought conditions and Respondent harvested the crops at reduced yields. Due to these low yields, Respondent was unable to pay for his farm-related debt incurred to produce the crop. Respondent filed a Chapter 12 petition on May 29, 2002 and subsequently converted his case to Chapter 7 on January 2, 2003.

The Agricultural Assistance Act of 2003 ("Act") was signed into law on February 20, 2003. The Act provided assistance to farmers who suffered losses due to weather-related disasters or other emergency conditions which affected their 2001 or 2002 crops. The farmers were allowed to

select either the 2001 or 2002 crops as the basis for determining their disaster payment. Respondent applied on January 30, 2004 for a disaster payment for the losses he incurred on his 2001 crops. In February 2004, Respondent received a disaster payment from the United States Department of Agriculture ("U.S.D.A.") Farm Service Agency ("F.S.A.") in the amount of $41,566 for the losses Respondent incurred on his 2001 crops.

### THE PARTIES' CONTENTIONS

Movant contends the disaster payment Respondent received under the Act is property of Respondent's bankruptcy estate under 11 U.S.C. § 541(a)(6), as proceeds of the pre-petition crops. Movant cites to numerous cases to support his contention. *See FarmPro Serv., Inc. v. Brown (In re FarmPro Services, Inc.)*, 276 B.R. 620 (D.N.D.2002); *Lemos v. Rakozy (In re Lemos)*, 243 B.R. 96 (Bankr.D.Idaho 1999); *and White v. U.S. (In re White)*, No. BRL88–00971C, 1989 WL 146417 (Bankr.N.D.Iowa 1989). Further, Movant argues that *Drewes v. Vote (In re Vote)*, 261 B.R. 439 (8th Cir. BAP 2001) ("*Drewes*"), *aff'd, Drewes v. Vote (In re Vote)*, 276 F.3d 1024 (8th Cir.2002) ("*Vote*"), a case relied upon by Respondent, applies only to issues arising under 11 U.S.C. § 541(a)(1), not 11 U.S.C. § 541(a)(6). 11 U.S.C. §§ 541(a)(1) & (6)(1993 & Supp.2003); *Vote*, 276 F.3d at 1027; *Drewes*, 261 B.R. at 441; *see also FarmPro*, 276 B.R. at 624.

Movant distinguishes the present case from this Court's decision in *In re Julian Thaggard*, No. 01–60571–JTL, *In re Paige Thaggard*, No. 01–60575–JTL, and *In re Winfred Jones*, No. 01–70513–JTL, slip op. at 7–8 (Bankr.M.D. Ga. April 3, 2003) (Laney, J.) (collectively "*Thaggard*"). In *Thaggard*, this Court ruled that peanut bases, assigned to the debtors by the U.S.D.A. F.S.A. after they filed bankruptcy petitions, were not property of the estate. *Id.* at 7–8. This Court based its decision in *Thaggard* on payment-in-kind ("P.I.K.") cases and a 9th Circuit Court of Appeals decision about fishing rights assigned to a debtor by the United States Department of Commerce post-petition. *Id.* at 6–7 (citing *Sliney v. Battley (In re Schmitz)*, 270 F.3d 1254, 1255 (9th Cir. 2001)("*Schmitz*"); *Kingsley v. First Am. Bank of Casselton (In re Kingsley)*, 865 F.2d 975, 976 (8th Cir.1989); *Schneider v. Nazar (In re Schneider)*, 864 F.2d 683, 684 (10th Cir.1988); *and In re Schmaling*, 783 F.2d 680, 681 (7th Cir.1986) as support for its decision). However, Movant argues that this Court was correct when it stated in *Thaggard* that there was "little doubt" about disaster payments being property of the bankruptcy estate, if tied to pre-petition crops. *Id.* at 5–6.

Movant argues that the enactment date of the Act is irrelevant. Movant urges that, because the Act relates back to pre-petition crops, the effective date of the Act should also relate back. Further, Movant argues that allowing Respondent to use the enactment date of the Act as a bright-line test to cut off the bankruptcy estate's interest in proceeds of estate property produces an absurd result. Finally, Movant argues that to exclude the disaster payment from the bankruptcy estate would be unfair to the creditors.

Respondent contends the disaster payment he received under the Act is not property of his bankruptcy estate because his right to the disaster payment did not accrue until after he had filed for bankruptcy protection and converted his case to one under Chapter 7 of the United States Bankruptcy Code ("Code"). Respondent distinguishes *In re Norville*, 248 B.R. 127 (Bankr.C.D.Ill.2000) and *White*, because the debtors in those cases were in Chapter

12, thus 11 U.S.C. § 1207 was applicable. 11 U.S.C. § 1207 (1993 & Supp.2003); *Norville,* 248 B.R. at 129; *White,* 1989 WL 146417 at *1. Respondent distinguishes *Boyett v. Moore (In re Boyett),* 250 B.R. 817 (Bankr.S.D.Ga.2000); *Lesmeister v. Lesmeister (In re Lesmeister),* 242 B.R. 920 (Bankr.D.N.D.1999) and *Kelley v. Ring (In re Ring),* 169 B.R. 73 (Bankr. M.D.Ga.1993) (Laney, J.), cases cited by this Court in *Thaggard,* because the disaster payment statutes were passed prior to the debtors' filing bankruptcy petitions in each of those three cases. *Thaggard,* slip op. at 5; *Boyett,* 250 B.R. at 818; *Lesmeister,* 242 B.R. at 922–923; *Ring,* 169 B.R. at 74.

Respondent distinguishes *Lemos* because the disaster payment statute in that case was passed prior to the case being converted from Chapter 12 to Chapter 7. *Lemos,* 243 B.R. at 97. Additionally, Respondent argues that the Bankruptcy Court decision in *Battley v. Schmitz (In re Schmitz),* 224 B.R. 117 (Bankr.D.Alaska 1998), supplemented by 232 B.R. 173 (Bankr.D.Alaska 1999), *aff'd In re Schmitz,* 246 B.R. 452 (9th Cir. BAP 1999) ("*Battley* "), relied upon by the court in *Lemos,* was later overturned by the United States Court of Appeals for the 9th Circuit in *Schmitz. Schmitz,* 270 F.3d at 1258; *Lemos,* 243 B.R. at 99; *Battley,* 224 B.R. at 124. Further, Respondent contends that *Lemos* was effectively overturned by the decision in *In re Stallings,* 290 B.R. 777 (Bankr.D.Idaho 2003). *Stallings,* 290 B.R. at 781–782; *Lemos,* 243 B.R. at 101. The court in *Stallings,* upon reviewing its own prior decision in *Lemos,* determined that the law had changed since its *Lemos* decision. *Id.* The court came to the conclusion, under 11 U.S.C. §§ 541(a)(1) & (6), that disaster payments received from disaster payment statutes passed after the filing of a bankruptcy petition were not property of the estate. 11 U.S.C.

§§ 541(a)(1) & (6) (1993 & Supp.2003); *see Stallings,* 290 B.R. at 781–784. The court reasoned that the 9th Circuit in *Schmitz* impliedly disapproved of post-petition government payments being classified as proceeds under 11 U.S.C. § 541(a)(6). 11 U.S.C. § 541(a)(6) (1993 & Supp.2003); *Schmitz,* 270 F.3d at 1256–1258; *see Stallings,* 290 B.R. at 783, n. 5. Respondent argues *Stallings* makes it clear that a disaster payment statute must be passed pre-petition for a Chapter 7 bankruptcy estate to have any interest in the payment authorized by the statute, even as proceeds under 11 U.S.C. § 541(a)(6). *Id.*

Respondent argues *Schmitz* is in agreement with the 8th Circuit Bankruptcy Appeals Panel ("B.A.P") decision in *Drewes,* which was affirmed by the 8th Circuit on appeal. *Schmitz,* 270 F.3d at 1258; *Drewes,* 261 B.R. at 441, 444; *see Vote,* 276 F.3d at 1027. In *Vote,* the debtor filed a Chapter 7 bankruptcy petition prior to the crop disaster statute being enacted by Congress. *Vote,* 276 F.3d at 1026. While the 8th Circuit Court of Appeals did not address 11 U.S.C. § 541(a)(6), the court determined that, because the debtor did not have a right to the disaster payment upon the filing of his case, the disaster payment was not property of the estate under 11 U.S.C. § 541(a)(1). 11 U.S.C. §§ 541(a)(1) & (6) (1993 & Supp.2003); *Vote,* 276 F.3d at 1026–1027. Respondent urges that this is consistent with the cases decided under 11 U.S.C. § 541(a)(6), all of which involved disaster payment statutes that were passed pre-petition. 11 U.S.C. §§ 541(a)(6) (1993 & Supp.2003).

Respondent argues that the court in *FarmPro* reached the right result on the wrong grounds. *FarmPro,* 276 B.R. at 623–625. The court in *FarmPro* ruled that the government payments were property of the estate under 11 U.S.C. § 541(a)(6), reasoning that the *Vote* decision was based

on 11 U.S.C. § 541(a)(1), not (a)(6). 11 U.S.C. §§ 541(a)(1) & (6) (1993 & Supp. 2003); *FarmPro,* 276 B.R. at 624. Respondent contends the disaster payments in *FarmPro* were property of the estate because the disaster payment statute was passed while the debtors were involved in a Chapter 12 bankruptcy proceeding, thus 11 U.S.C. § 1207 was involved. 11 U.S.C. § 1207 (1993 & Supp.2003); *FarmPro,* 276 B.R. at 622–623; *see White,* 1989 WL 146417 at *6.

Respondent argues that all of the decisions he cited can be read to be consistent. First, Respondent urges that the cases highlight a critical difference between a Chapter 7 liquidation case and a Chapter 12 case, where there is an on-going estate which can acquire property after the filing of the petition. Second, Respondent argues that a portion of this Court's memorandum opinion in *Thaggard,* which Respondent considers dicta but was relied upon by Movant, was incorrect. *Thaggard,* slip op. at 5–6. Respondent cites to the following passage in *Thaggard* as incorrect:

> "Later cases have extended the ruling to situations where the bill that provided the disaster relief was passed after the case was filed. *See Boyett v. [Moore] (In re Boyett),* 250 B.R. 817, 822 (Bankr. S.D.Ga.2000) [ (Dalis, J.) ]; *and Lemos v. Rakozy (In re Lemos),* 243 B.R. 96, 99–100 (Bankr.D.Idaho 1999). Cases holding this include *Lemos,* heavily relied upon by Trustee, and *Boyett,* cited by some of the parties. *See id.* There appears to be little doubt as to disaster payments because they are related to a particular crop that would have been planted before the case was filed. Those cases may be decided under 11 U.S.C. § 541(a)(1) or (a)(6), but in either case the result seems to be that disaster payments are property of the estate." *Id.*

Respondent urges that this is incorrect. Respondent states that *Lemos* and *FarmPro* are the only two decisions to determine that disaster payments received from disaster payment statutes enacted postpetition are property of the estate. *FarmPro,* 276 B.R. at 622–623; *Lemos,* 243 B.R. at 97. Respondent maintains that these two decisions are no longer good law. *See Stallings,* 290 B.R. at 780–784.

### CONCLUSIONS OF LAW

Movant cites 11 U.S.C. § 541(a)(6) as authority for the proposition that the disaster payment received by Respondent is property of the estate. 11 U.S.C. §§ 541(a)(6) (1993 & Supp.2003). Section 541(a)(1) defines property of the estate as all legal or equitable interests of the debtor, wherever located and by whomever held, as of the commencement of the case, subject to certain exceptions that are not relevant here. 11 U.S.C. § 541(a)(1) (1993 & Supp.2003). Section 541(a)(6) extends the definition of property of the estate to include proceeds, product, offspring, rents, or profits of or from property of the estate, except for post-petition wages earned by an individual debtor after the commencement of the case. 11 U.S.C. § 541(a)(6) (1993 & Supp.2003).

■ The disaster payment in this case can be specifically tied to a pre-petition crop that had been harvested and sold by Respondent pre-petition ("2001 crop"). The 2001 crop itself cannot be property of the estate because it was not in existence on the date Respondent filed his bankruptcy petition. The crop that would be property of the estate would have been any crops in the ground as of the petition date ("2002 crop"). Therefore, the 2001 crop disaster payment cannot be considered proceeds of estate property.

However, what is property of the estate is the *right* to the 2001 crop disaster payment, however contingent it may have been on the filing date. The right to the disaster payment was a pre-petition inchoate right that vested or became choate post-petition upon the enactment of the Act. Upon the occurrence of the disaster, Respondent had the right to collect disaster payments from the government, if such legislation was passed. Further, it would be inequitable to allow Respondent to retain the 2001 crop disaster payment. Congress could not have intended to give Respondent a windfall while avoiding paying the creditors whose extension of credit funded the 2001 crop.

This case is distinguishable from *Schmitz* and *Thaggard*. *Schmitz*, 270 F.3d at 1255–1256; *Thaggard*, slip op. at 2–3. In *Schmitz* and *Thaggard*, the government assigned rights to the debtors which would produce income for future activities. *Id.* The rights had income generating potential, i.e. income from selling the rights as in *Schmitz* and income for farming peanuts as in *Thaggard*. *Id.* However, the income generating potential was based on future post-petition activities, not pre-petition activities, i.e. the owner of the rights had to farm or fish in the future to receive the income. While the rights were based on average yields from the debtors' pre-petition activities, they were not rights to income for the pre-petition activities.

In the present case before the Court, Respondent had the right to the disaster payment based on his pre-petition farming activity in 2001. The disaster payment received by Respondent post-petition stemmed from an inchoate right he acquired pre-petition. Therefore, the disaster payment is property of the estate under 11 U.S.C. § 541(a)(1). 11 U.S.C. § 541(a)(1)(1993 & Supp.2003). The Court finds in favor of Movant. An order in accordance with this Memorandum Opinion will be entered.