# United States Bankruptcy Appellate Panel
**FOR THE EIGHTH CIRCUIT**

---

00-6115ND

---

| | | |
|---|---|---|
| In re: Daryl Lee Vote, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Wayne Drewes, Trustee, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Appellant | * | District of North Dakota |
| | * | |
| v. | * | |
| | * | |
| Daryl Lee Vote, | * | |
| | * | |
| Appellee. | * | |

---

Submitted: March 27, 2001
Filed: April 25, 2001

---

Before KRESSEL, SCHERMER, and VENTERS,[1] Bankruptcy Judges

---

VENTERS, Bankruptcy Judge.

The Chapter 7 Trustee, Wayne Drewes, appeals from the November 6, 2000, Order of the Bankruptcy Court[2] denying the Trustee's Motion for Turnover ("Motion"). The Trustee's Motion sought

---

[1] The Honorable Jerry W. Venters, United States Bankruptcy Judge for the Western District of Missouri, sitting by designation.

[2] The Honorable William A. Hill, United States Bankruptcy Judge for the District of North Dakota.

the turnover of certain postpetition payments received by the Debtor pursuant to two federal agricultural assistance and crop disaster programs. Because we conclude that those postpetition payments received by the Debtor do not constitute property of the bankruptcy estate, the Order of the Bankruptcy Court will be affirmed.

## BACKGROUND

The facts of this case are straightforward and uncontroverted.[3]

The Debtor filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of North Dakota on September 7, 1999. Wayne Drewes was appointed as the Chapter 7 trustee.

Subsequent to the filing, on October 22, 1999, Congress enacted the Omnibus Consolidated Appropriations Act of 2000. This act funded the Market Loss Assistance Program ("MLAP"), which provided payments for all farmers (meeting certain requirements) enrolled in 7-Year Production Contracts with the Farm Service Agency ("FSA"), and funded the Crop Disaster Program ("CDP") for the 1999 crop year. The Debtor, who had enrolled in a 7-Year Production Contract with the FSA in May 1996, qualified for and received an $11,632.00 MLAP payment on November 3, 1999. The Debtor also received two CDP payments: one for $10,866.00, received on February 9, 2000, and one for $10,740.00, received on April 7, 2000. He enrolled in the CDP program on February 1, 2000, nearly five months after his bankruptcy petition was filed.

On October 16, 2000, the Trustee filed a Motion for Turnover seeking the turnover of the postpetition MLAP and CDP payments received by the Debtor. The Bankruptcy Court held a hearing on the Trustee's Motion on October 31, 2000, and denied the Trustee's Motion in a Memorandum and Order entered on November 6, 2000. The Trustee now appeals that Order.

---

[3] Prior to the Trustee's Motion for Turnover, the Trustee and the Debtor entered into a stipulation of facts which was incorporated into both of the parties' appellate briefs.

## ISSUE

The issue on appeal is whether the MLAP and CDP payments received postpetition by the Debtor were or were not property of the bankruptcy estate.[4]

## STANDARD OF REVIEW

We review the findings of fact of the bankruptcy court for clear error and its legal determinations *de novo*. See O'Neal v. Southwest Missouri Bank (In re Broadview Lumber Co.), 118 F.3d 1246, 1250 (8th Cir.1997); Hartford Cas. Ins. Co. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 214 B.R. 197, 199 (B.A.P. 8th Cir. 1997). The determination of whether property constitutes property of the bankruptcy estate is a legal issue to be reviewed *de novo*. Brown v. Luker (In re Zepecki), 258 B.R. 719 (B.A.P. 8th Cir. 2001).

## DISCUSSION

The Trustee argues that the Bankruptcy Court erred when it determined that the CDP and MLAP payments received by the Debtor postpetition were not property of the bankruptcy estate. The Bankruptcy Court based its determination that the CDP and MLAP payments were not part of the bankruptcy estate on the fact that as of the date of the petition, the federal legislation that authorized and funded those payments had not yet been enacted, and therefore, the right to receive payments did not exist at the time the Debtor filed bankruptcy. Consequently, the Bankruptcy Court reasoned, the right to receive the payments and, by extension, the payments themselves, did not become part of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1) or (7). The Trustee, however, contends that under Segal v. Rochelle, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), property of the bankruptcy estate includes after-acquired property that is "sufficiently rooted in the prebankruptcy past and so little entangled in the debtor's ability to make a fresh start that it should not be excluded from property of the estate," id. at 380, and the CDP and MLAP payments qualify as property of the bankruptcy estate under that standard. Alternatively,

---

[4] The Trustee identifies two additional issues on appeal: (1) whether there is a difference between the MLAP and the CDP justifying turnover of one but not both, and (2) to what remedy is the Trustee entitled. These two issues are resolved by implication in our analysis of the primary issue and will not be discussed further.

3

the Trustee argues that the CDP and MLAP payments are property of the bankruptcy estate under 11 U.S.C. § 541(a)(6), as "proceeds ... of or from property of the estate."[5]

We agree with the Bankruptcy Court that the CDP and MLAP payments are not property of the bankruptcy estate because the Debtor had no cognizable legal right to those payments at the time he filed for bankruptcy. The Trustee's argument based on 11 U.S.C. § 541(a)(6) will not be considered, inasmuch as the record on appeal does not show that the Trustee raised this argument in the Bankruptcy Court, and we generally will not hear new arguments on appeal in the absence of extraordinary circumstances or a miscarriage of justice, neither of which has been shown here. See In re Hervey, 252 B.R. 763, 767-768 (B.A.P. 8th Cir. 2000).

Section 541(a)(1) provides that the bankruptcy estate is comprised of "...[a]ll legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "The scope of this paragraph [§ 541(a)(1)] is broad. It includes all kinds of property, including tangible or intangible property, causes of action (see Bankruptcy Act §70a(6)), and all other forms of property currently specified in section 70a of the Bankruptcy Act." United States v. Whiting Pools, Inc., 462 U.S. 198, 205, n. 9, 103 S.Ct. 2309, 2314, 76 L.Ed.2d 515 (1983)(quoting H.R. Rep. No. 95-595, p. 367 (1977); S. Rep. No. 95-989, p. 82 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5868, 6323.)). While the scope of § 541(a)(1) is broad, it is not without limits; it is limited temporally by the plain language of the statute to interests that exist as of the commencement of the case, and is further limited by the scope and definition given to the phrase "all legal and equitable interests." 11 U.S.C. § 541(a)(1).

The Bankruptcy Court determined that at the time the Debtor's bankruptcy petition was filed, he did not have an interest in the CDP and MLAP payments that fell within the ambit of § 541(a)(1). Therefore, the Bankruptcy Court reasoned, the right to the CDP and MLAP payments did not pass to the bankruptcy estate when the Omnibus Consolidated Appropriations Act of 2000 was enacted; rather, because the actual right to those payments arose postpetition, that right (and the payments pursuant thereto) inured to the Debtor.

---

[5] On appeal, the Trustee did not forward any argument disputing the portion of the Bankruptcy Court's ruling based on 11 U.S.C. § 541(a)(7). We therefore deem that argument to be abandoned and will not discuss it further.

4

The Trustee argues that the Bankruptcy Court erred by defining property of the estate too narrowly and that the scope of property encompassed by § 541(a)(1) is broad enough to include the Debtor's right to the CDP and MLAP payments as of the commencement of the case. Specifically, the Trustee points to Segal v. Rochelle, 382 U.S. 375, 380, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966), for the proposition that after-acquired property may be considered part of the bankruptcy estate if it is "sufficiently rooted in the prebankruptcy past and so little entangled in the debtor's ability to make a fresh start that it should not be excluded from property of the estate." Segal, 382 U.S. at 380. Applying that standard to the property at issue here, the Trustee contends that the CDP and MLAP payments are property of the estate because they are rooted in the Debtor's pre-bankruptcy farming activities and that the exclusion of the payments from the bankruptcy estate would not hamper the Debtor's ability to make a fresh start.

The issue of whether the definition of property of the estate contained in 11 U.S.C. § 541(a)(1) is sufficiently broad to encompass payments pursuant to government programs funded by legislation enacted *postpetition* is unsettled. One court has held, on facts nearly identical to the instant case, that payments received by the debtor postpetition pursuant to a Crop Loss Disaster Assistance Program enacted postpetition were property of the bankruptcy estate because, under Segal, the payments were sufficiently tied to the prebankruptcy past, namely, the prepetition failure of the debtor's crops. See In re Lemos, 243 B.R. 96 (Bankr. D. Idaho 1999). See also, In re Schmitz, 224 B.R. 117 (Bankr. D. Alaska 1998) (holding that, under Segal, certain fishing rights received by the debtor pursuant to a government program enacted postpetition were property of the estate). On the other hand, at least one court (in addition to the Bankruptcy Court's ruling in this case) has held that such payments received pursuant to a program enacted postpetition are not property of the bankruptcy estate. See United States v. Thomas (In re Thomas) 93 B.R. 475 (N.D. Tex. 1988). Unfortunately, the court in In re Thomas did not provide a detailed explanation of the rationale behind its holding. Id.

The issue is further muddied by the questionable applicability of Segal in light of the of the enactment of the current Bankruptcy Code in 1978 (which replaced the Bankruptcy Act of 1898). The statement in Segal that after-acquired property may be considered part of the bankruptcy estate if it is "sufficiently rooted in the prebankruptcy past and so little entangled in the debtor's ability to make a fresh start" was based on an analysis of § 70a(5) of the Bankruptcy Act of 1898. Segal, 382 U.S. at 379-81. The Court in Segal developed this definition of property of the estate in the context of determining whether a tax refund should be included in the debtor's bankruptcy estate where the debtor filed bankruptcy in

September but could not claim the refund until the end of the year. Id. The Court held that under its interpretation of § 70a(5) the tax refund was part of the estate. Id. at 384.

Subsequent to the enactment of the current Bankruptcy Code, many courts have cited Segal in support of the general proposition that 11 U.S.C. § 541(a)(1) is to be interpreted broadly, see e.g., In re Potter, 228 B.R. at 423 (citing Barowsky v. Serelson (In re Barowsky), 946 F.2d 1516, 1518-19 (10th Cir. 1991)), and for the specific proposition that after-acquired property may be considered part of the bankruptcy estate if it is sufficiently rooted in the prebankruptcy past and so little entangled in the debtor's ability to make a fresh start. See e.g., In re Alvarez, 224 F.3d 1273, 1279 (11th Cir. 2000); In re Yonikus, 996 F.2d 866, 869 (7th Cir. 1993); In re Barowsky, 946 F.2d at 1518-19; Rau v. Ryerson (In re Ryerson), 739 F.2d 1423, 1425 (9th Cir. 1984); In re Potter, 228 B.R. at 423-24.[6] In support of their conclusion that Segal's definition of property of the estate is still applicable without reservation, all of these courts cite, either directly or indirectly,[7] to an excerpt from the current Bankruptcy Code's legislative history which states that Congress specifically adopted the Supreme Court's analysis of property contained in Segal. See S. Rep. No. 989, 95th Cong., 2d Sess. 82, reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5868; H.R. Rep. No. 595, 95th Cong., 1st Sess. 367, reprinted in 1978 U.S. Code Cong. & Admin. News 5963, 6323. A close examination of this legislative history, however, reveals that Segal's holding may be viable only to the extent that it applies to tax refunds received or to be received postpetition. Both the Senate and House of Representatives congressional record state, "The result of Segal v. Rochelle, 382 U.S. 375 (1966) is followed, *and the right to a refund is property of the estate*." S. Rep. No. 989, 95th Cong., 2d Sess. 82, reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5868; H.R. Rep. No. 595, 95th Cong., 1st Sess. 367, reprinted in 1978 U.S. Code Cong. & Admin. News 5963, 6323 (emphasis added).

Consequently, the issue of whether the CDP payment is property of the estate presents an extremely close call. On one hand, a broad application of Segal might support a finding the CDP is property of the bankruptcy estate – The CDP payments are in some ways rooted in the prebankruptcy farming activities and are not "entangled" in the Debtor's ability to make a fresh start. On the other hand, if the holding in Segal is indeed limited to tax refunds, as the legislative history suggests, under the plain

---

[6] The Eighth Circuit Court of Appeals has not cited Segal since the passage of the 1978 Bankruptcy Code.

[7] By "indirectly," we mean that some cases cite other cases in which the legislative history is cited.

language of § 541(a)(1), the CDP payments would not be property of the bankruptcy estate, inasmuch as the Debtor had no discernible legal or equitable right to those payments at the commencement of the case.

We are of the opinion that in light of the questionable applicability of <u>Segal</u> to the facts of this case and the fact that in this instance there was a date certain as to when the Debtor became legally entitled to the CDP and MLAP payments – a date that was clearly postpetition – those payments cannot be considered property of the bankruptcy estate under 11 U.S.C. § 541(a)(1). As of the date the Debtor filed his bankruptcy petition, he may have had, at most, an expectation that Congress would enact legislation authorizing crop disaster or assistance payments to farmers affected by the weather conditions in 1999, but there was no assurance that Congress would authorize such payments or that the Debtor would qualify for them if they were authorized. It was equally likely that Congress would *not* pass such relief legislation. Such an expectancy (or "hope," if you will) does not rise to the level of a "legal or equitable interest" in property such that it might be considered property of the estate under 11 U.S.C. § 541(a)(1).

## CONCLUSION

Because we conclude that the Crop Disaster Program and Market Loss Assistance Program payments received by the Debtor postpetition do not constitute property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1) or (7), the November 6, 2000, Order of the Bankruptcy Court is affirmed.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE
PANEL, EIGHTH CIRCUIT.