[No. B230580. Second Dist., Div. Six. Nov. 22, 2011.]

RUBEN NUNGARAY et al., Plaintiffs and Appellants, v.
LITTON LOAN SERVICING, LP, et al., Defendants and Respondents.

**Counsel**

Matthew Gary Evans for Plaintiffs and Appellants.

Roup & Associates, Ronald D. Roup and Kerre Baker Albertoli for Defendants and Respondents.

OPINION

**GILBERT, P. J.**—Homeowners hope to enter into a loan modification agreement with their lender pursuant to the federal Home Affordable Mortgage Program (HAMP). Preliminary to a possible loan modification agreement, owners execute a "loan work-out plan" for the lender's review. During its review, lender accepts reduced mortgage payments from owners.

■ We conclude this plan, however unique, is no less subject to general principles of contract law. We also conclude that when a lender suspends foreclosure proceedings pursuant to such a plan, as it did here, it did not violate the so-called one-form-of-action rule.

Ruben and Dora Nungaray appeal a summary judgment entered in favor of defendants Litton Loan Servicing, LP (Litton), and Bank of America, National Association (Bank). We affirm.

### FACTS AND PROCEDURAL HISTORY

On January 23, 2010, the Nungarays brought an action against Litton and the Bank, alleging causes of action for breach of contract, negligence, and quiet title. The lawsuit arose from the Nungarays' default on an obligation secured by a deed of trust against their Simi Valley home, and a subsequent nonjudicial foreclosure. The Nungarays allege that the foreclosure sale and their subsequent eviction from the property were improper because they had entered into and fully performed a loan modification agreement with Litton and the Bank prior to the foreclosure sale. The alleged agreement was a HAMP loan workout pursuant to title 12 United States Code section 5201 et seq.[1] (*Williams v. Geithner, supra*, 2009 U.S.Dist. Lexis 104096 [detailed discussion of HAMP].)[2] Among other things, the Nungarays requested a court order

---

[1] The United States Department of the Treasury and other federal agencies created HAMP pursuant to authority granted by the Emergency Economic Stabilization Act, title 12 United States Code section 5201 et seq. (*Williams v. Geithner* (D.Minn., Nov. 9, 2009, Civil No. 09-1959 ADM/JJG) 2009 U.S.Dist. Lexis 104096, pp. *3–*4.) Mortgage servicers may voluntarily participate in HAMP. (*Id.* at p. *6, fn. 1.) Treasury guidelines set forth threshold criteria to define the class of eligible borrowers. (*Id.* at pp. *6–*7.) The guidelines also set forth accounting steps using a standardized net present value test to determine whether it is more profitable to modify the loan or to allow it to proceed to foreclosure. (*Id.* at pp. *8–*9.) Calculations under HAMP involve assigning values to certain variables that are largely within the servicers' discretion, thus precluding any entitlement to loan modifications. (*Id.* at pp. *20–*21.)

[2] California Rules of Court do not prohibit citation to unpublished federal cases, which may be properly cited as persuasive authority. (*Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP* (2010) 183 Cal.App.4th 238, 251, fn. 6 [107 Cal.Rptr.3d 373]; *Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049, 1070, fn. 10 [99 Cal.Rptr.3d 661].)

cancelling and expunging the trustee's deed in foreclosure and quieting title in their favor, compensatory damages, and attorney's fees.

Litton successfully demurred to the second cause of action alleging negligence, and the Nungarays did not amend the complaint. After answering the complaint, Litton and the Bank moved for summary judgment, asserting that the Nungarays could not establish every element of the remaining two causes of action, and that a complete defense to the lawsuit exists. (Code Civ. Proc., § 437c, subd. (p)(2).)[3]

Declaratory and documentary evidence submitted by the parties, including recorded documents that were judicially noticed by the trial court, established this:

On March 3, 2006, the Nungarays refinanced their property and executed a promissory note for $500,000 and a deed of trust securing the obligation. The original beneficiary of the deed of trust was Mandalay Mortgage, LLC, but the Bank later acquired beneficial interest through an assignment recorded on March 5, 2009. Litton serviced the loan on behalf of the Bank.

By January 2009, the Nungarays were delinquent in their loan payments. On January 9, 2009, the trustee under the deed of trust recorded a notice of default and election to sell under deed of trust. Three months later, the trustee recorded a notice of trustee's sale set for April 29, 2009.

In May 2009, the Nungarays employed a business entity to negotiate and obtain a modification of their existing obligation with the Bank. Subsequently, the Nungarays executed a document entitled "Loan Workout Plan (Step One of Two-Step Documentation Process)" (Plan) on July 3, 2009. Neither Litton nor the Bank executed the Plan.

In part, the three-page Plan stated: "If I am in compliance with this Loan Workout Plan (the 'Plan') and my representations in Section 1 [regarding ownership of the property and documentation of financial hardship] continue to be true in all material respects, then the Lender will provide me with a Loan Modification Agreement . . . ." (Plan, ¶ 1.)

"If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income . . . . I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for

---

[3] All further statutory references are to the Code of Civil Procedure unless stated otherwise.

the Offer. This Plan will not take effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan with the Lender's signature." (Plan, ¶ 2.)

"The Lender will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates . . . ." (Plan, ¶ 2B.)

"If prior to the Modification Effective Date, (i) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement . . . the Loan Documents will not be modified and this Plan will terminate." (Plan, ¶ 2F.)

"I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan." (Plan, ¶ 2G.)

The Plan required the Nungarays to make certain payments ("Trial Period Payment[s]") during August, September and November 2009, which they did. Litton subsequently returned two of the four payments to them.

The Plan also required the Nungarays to provide documentation of their income and eligibility for the program. Litton sent letters to the Nungarays' attorney on June 29, 2009, July 30, 2009, and September 3, 2009, requesting the Nungarays' pay stubs, federal income tax returns, and a hardship affidavit. Litton also telephoned the Nungarays' "authorized representative" on August 24, 2009, and requested the required financial information. Litton returned the Nungarays' first payment because it did not include the required financial information.

Thereafter, Litton received only part of the required financial information. The Nungarays later declared that they did not receive notice from Litton stating that the required financial documentation "was missing."

On November 1, 2009, Litton notified the Nungarays' counsel that the Plan was terminated and foreclosure proceedings would resume. On November 10, 2009, the trustee held a nonjudicial foreclosure sale of the Nungarays' property. The Bank purchased the property at a public auction for $344,868 and thereafter evicted the Nungarays from the property.

Following oral argument by the parties, the trial court granted summary judgment in favor of Litton and the Bank. In part, the court determined that the Plan was not an enforceable agreement requiring defendants to enter into a loan modification because it "was expressly contingent upon a number of factors which never came to fruition."

The Nungarays appeal and contend that (1) the Plan is an enforceable loan modification and (2) Litton and the Bank violated the one-form-of-action rule of section 726 by retaining the trial period payments and applying them against the unpaid principal balance of the mortgage.

## DISCUSSION

### I.

The Nungarays argue that the Plan is an enforceable contract, pointing out that it imposed new and different obligations for each party. They assert that Litton and the Bank are estopped to claim the statute of frauds as a defense because they accepted the trial period payments and their pleadings acknowledge the existence of the Plan. (Civ. Code, §§ 1624, subd. (a)(3), 1698; *Sutton v. Warner* (1993) 12 Cal.App.4th 415, 422 [15 Cal.Rptr.2d 632] [doctrine of part performance is a well-recognized exception to the statute of frauds].) The Nungarays contend that they were lulled into believing their loan had been modified. (*Lupertino v. Carbahal* (1973) 35 Cal.App.3d 742, 750 [111 Cal.Rptr. 112] [notice to defaulting trustor required where beneficiary or trustee undertakes course of conduct instilling reliance thereon].)

■ The interpretation of a contract is a question of law for the court unless the interpretation depends upon the credibility of extrinsic evidence. (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395 [75 Cal.Rptr.3d 333, 181 P.3d 142] [statement of general rule]; *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839] [same].) Here we independently interpret the Plan because the parties did not present any evidence regarding its meaning. (*City of Hope National Medical Center*, at p. 395.)

As a matter of law, there was no contract here. The plain and clear language of paragraph 2G states that the Plan "is not a modification of the Loan Documents" and the documents will not be modified unless the Nungarays "meet all of the conditions required for modification," including the Nungarays' receipt of a "fully executed copy of a Modification Agreement." The Plan also required the Nungarays to submit financial information regarding their hardship and states that Litton and the Bank would determine whether they "qualif[ied] for the Offer." (Plan, ¶ 2.)

Neither Litton nor the Bank executed the Plan nor did they prepare, execute, and forward a permanent modification agreement. Litton and the Bank also did not receive the Nungarays' complete financial information, despite sending the Nungarays' counsel three letters requesting the information and returning one of the Nungarays' payments for lack of accompanying financial information.

The Nungarays made four monthly modified payments (two of which were returned to them). Litton and the Bank postponed the foreclosure sale previously set for April 29, 2009. Following termination of the Plan, the trustee conducted the foreclosure sale on November 11, 2009.

Under the circumstances, principles of equitable estoppel do not apply because neither Litton nor the Bank led the Nungarays to believe that a permanent loan modification was forthcoming.

## II.

The Nungarays contend that Litton and the Bank violated the one-form-of-action and security-first rules of section 726 by retaining two Plan payments and applying them against the unpaid principal balance of the mortgage. They rely on *Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 999 [75 Cal.Rptr. 201, 800 P.2d 557], holding that section 726 requires a secured creditor to proceed against the security before enforcing the underlying debt through a setoff. The Nungarays point out that Civil Code section 2953 provides that the one-form-of-action rule may not be waived. They assert that the Bank waived its security interest in the property by accepting the trial period payments.

■ Section 726, subdivision (a) provides: "There can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property . . . , which action shall be in accordance with the provisions of this chapter." In *Security Pacific National Bank v. Wozab, supra*, 51 Cal.3d 991, 997, our Supreme Court held that section 726 allows a secured creditor to "bring only one lawsuit to enforce its security interest and collect its debt." This section also embodies a "security-first" rule, "requir[ing] a secured creditor to proceed against the security before enforcing the underlying debt." (*Security Pacific National Bank*, at p. 999.)

■ The one-form-of-action and security-first rules do not apply under the circumstances here. The Nungarays sought to modify their loan by employing an entity to negotiate a loan modification. Thereafter, they voluntarily paid monthly payments during the Plan period in hopes of obtaining a loan modification after Litton and the Bank reviewed their financial information

and declaration of hardship. In exchange, Litton and the Bank suspended further foreclosure proceedings for approximately six months. We do not consider the payments a setoff manifesting an election to not foreclose pursuant to the one-form-of-action rule of section 726. Moreover, Civil Code section 2953 does not preclude an agreement between a borrower and a lender regarding a forbearance of foreclosure to negotiate a loan modification.

*Mehta v. Wells Fargo Bank, N.A.* (S.D.Cal. 2010) 737 F.Supp.2d 1185 concerned a similar claim. There the court determined that money paid as part of a forbearance agreement did not invoke the one-form-of-action or security-first rule of section 726. "[N]o set-off occurred and Wells Fargo did not pursue the Plaintiff's assets prior to foreclosure. Instead, the parties agreed to a forbearance agreement which required the Plaintiff to make certain payments. He made those payments but failed to fulfill his obligations regarding another aspect of the agreement. . . . This was not a set-off or other attempt to pursue Plaintiff personally prior to foreclosure, but was . . . a joint agreement to stave off foreclosure. As such, application of the one-action or security-first rules is improper . . . ." (*Mehta*, at p. 1202, citation omitted.)

The judgment is affirmed. Respondents shall recover costs on appeal.

Yegan, J., and Coffee, J., concurred.

On December 1, 2011, the opinion was modified to read as printed above.