FILED

**ORDERED PUBLISHED**

MAR 03 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

In re:                                )    BAP No.    CC-14-1346-TaDPa
                                       )
WILLIAM DAVID GOLDSTEIN and            )    Bk. No.    2:10-bk-43720-DS
MOLLY K. GOLDSTEIN,                    )
                                       )
              Debtors.                 )
_____)
                                       )
WILLIAM DAVID GOLDSTEIN and            )
MOLLY K. GOLDSTEIN,                    )
                                       )
              Appellants,              )
                                       )
v.                                     )    **O P I N I O N**
                                       )
ALBERTA P. STAHL, Chapter 7            )
Trustee; WELLS FARGO BANK,             )
N.A.; BANK OF AMERICA, N.A.,           )
                                       )
              Appellees.               )
_____)

Argued and Submitted on January 22, 2015
at Pasadena, California

Filed - March 3, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Deborah J. Saltzman, Bankruptcy Judge, Presiding

_____

Appearances:    William David Goldstein of the Law Offices of
                William D. Goldstein argued for appellants
                William David Goldstein and Molly K. Goldstein;
                Bernard Kornberg of Severson & Werson argued for
                appellees Wells Fargo Bank, N.A. and Bank of
                America, N.A.; and Timothy J. Yoo of Levene,
                Neale, Bender, Yoo & Brill LLP argued for
                appellee Alberta P. Stahl.

_____

Before:  TAYLOR, DUNN, and PAPPAS, Bankruptcy Judges.

TAYLOR, Bankruptcy Judge:

## INTRODUCTION

Appellants, chapter 7[1] debtors William David Goldstein and Molly K. Goldstein, appeal the bankruptcy court's order authorizing the chapter 7 trustee to compromise and sell, as property of the chapter 7 estate, four state court claims filed by the Goldsteins in postpetition litigation. We conclude that the bankruptcy court did not err when it held that the claims at issue were property of the estate that could be compromised or sold, and we AFFIRM.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Events preceding the Goldsteins' bankruptcy filing

Like many similarly situated homeowners impacted by the bad economy, the Goldsteins applied in 2009 for modification of the mortgage[2] against their home in Culver City, California. In October 2009, Wells Fargo Bank, N.A. ("Wells Fargo"), as the loan servicer, granted the Goldsteins a three-month trial period plan ("TPP") under the Home Affordable Modification Program

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] The mortgage was originated by American Mortgage Network, Inc. The beneficial interest in the mortgage was purchased by Bank of America, N.A. as Successor by Merger to LaSalle Bank National Association, as Trustee for Morgan Stanley Loan Trust 2006-3AR; Wells Fargo Bank, N.A. serviced the loan, albeit at least initially under the name of America's Servicing Company.

("HAMP").[3] The TPP required the Goldsteins to make the first of three payments by November 1, 2009, and to provide executed copies of the TPP and certain other required documentation. The second and third payments were due December 1, 2009 and January 1, 2010, respectively. The TPP provided[4]:

> If I am in compliance with this Loan Trial Period and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Loan Modification Agreement, as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.

Request for Judicial Notice, ECF Dkt. #41 at 47 of 254.

The Goldsteins made the three trial payments required under the TPP. Wells Fargo, however, did not provide a permanent loan modification nor did it send the Goldsteins a notice of denial of a permanent modification, as required under the TPP and HAMP.[5] Thereafter, the Goldsteins made four more monthly

_____

[3] Pursuant to Congress' Troubled Asset Relief Program, the U.S. Department of the Treasury launched HAMP in 2009 to help distressed homeowners with delinquent mortgages. See Corvello v. Wells Fargo Bank, N.A., 728 F.3d 878, 880 (9th Cir. 2013) (per curiam).

[4] The TPP also provided that it would "not take effect unless and until both [the Goldsteins] and the Lender sign it and Lender provides [the Goldsteins] with a copy of [the TPP] with the Lender's signature." Request for Judicial Notice, ECF Dkt. #41 at 47 of 254. No fully signed copy of the TPP was ever returned to the Goldsteins.

[5] HAMP, like the TPP here, required Wells Fargo either to provide the Goldsteins a permanent loan modification, if the Goldsteins made the three trial payments and otherwise complied with the TPP or to notify them that they did not qualify for a permanent loan modification. See Corvello, 728 F.3d at 880-81 (discussing background and provisions of HAMP); and West v. JPMorgan Chase Bank, N.A., 214 Cal. App. 4th 780, 797-98 (2013) (interpreting the United States Department of the Treasury

(continued...)

-3-

payments in the amount required under the TPP. Wells Fargo still did not send them either notice of denial or a permanent loan modification agreement. The Goldsteins stopped their payments after May 2010, and in August 2010, filed for protection under chapter 7 to stop foreclosure proceedings. They received their discharges in December 2010, and the bankruptcy case was closed as a no asset case.

## B. The State Court Action

In October 2012, nearly two full years after they received their chapter 7 discharges, the Goldsteins filed an action against Wells Fargo and Bank of America, among others, in Los Angeles, California Superior Court (the "State Court Action"). They subsequently filed a verified second amended complaint (the "SAC"). The first, second, third, and fifth causes of action in the SAC relate to the TPP (the "TPP Claims").[6]

In the first cause of action, for fraud in the inducement, the Goldsteins alleged that when Wells Fargo offered them the TPP in 2009, Wells Fargo never intended to grant them a permanent loan modification, as required under HAMP; yet, to their detriment, the Goldsteins made seven payments totaling $22,201.83 in reliance thereon. The Goldsteins alleged in the

---

[5](...continued)
Directive 09-01 and HAMP guidelines as imposing the proviso that if the borrower complies with a HAMP trial plan agreement, the lender must offer a permanent loan modification).

[6] The remaining 9 of the 13 causes of action contained in the SAC related to postpetition events and transactions between the Goldsteins and Wells Fargo (and others) in connection with subsequent loan modifications and foreclosure proceedings, none of which pertain to the matters addressed in this appeal.

-4-

second cause of action, based on promissory estoppel, that they reasonably relied to their detriment on Wells Fargo's promise to provide them with a permanent loan modification following the Goldsteins' compliance with the TPP and that Wells Fargo should be required to make good on its promise. In the third cause of action, the Goldsteins asserted that Wells Fargo's actions with respect to the TPP constituted fraud and were done maliciously and with oppression, entitling the Goldsteins to an award of punitive and exemplary damages. The Goldsteins based their fifth cause of action on breach of contract and the assertions that they complied with their obligations under the TPP, Wells Fargo did not, and the Goldsteins were damaged as a result.

Wells Fargo and Bank of America demurred to the SAC. As to the TPP Claims, they based their demurrer on the grounds that the Goldsteins lacked standing to raise them because the TPP Claims arose prepetition, the Goldsteins did not schedule them in their bankruptcy, and, therefore, they remained assets of the chapter 7 case. The state court issued a tentative ruling in advance of the hearing sustaining the demurrer as to the TPP Claims, but continued the hearing to allow the Goldsteins to reopen the bankruptcy case.

## C. Case reopening and subsequent events

The Goldsteins promptly filed a motion to reopen the bankruptcy case, "for the limited purpose of allowing [the Goldsteins] to file an Amended Schedule B (personal property) to schedule certain claims against Wells Fargo Bank." Order Granting Motion to Reopen, ECF Dkt. #23 at 2. The bankruptcy court granted the motion. It also ordered that a trustee be

-5-

reappointed to administer the estate and that the case was to be re-closed 30 days after the Goldsteins filed their Amended Schedule B, "**provided that**, neither the chapter 7 trustee nor any party in interest opposes such re-closing of the case prior to expiration of the 30-day period." Id. (emphasis in original).

The Goldsteins filed their Amended Schedule B disclosing the TPP Claims as other contingent and unliquidated claims in the amount of $22,000; they included, however, the following disclaimer:

> Debtors believe all causes of action are post-petition causes of action, but Wells Fargo's Demurrer in Superior Court alleges that causes of action 1, 2, 3 and 5 are pre-petition causes of action, which debtors lack standing to prosecute, because not scheduled. Approx. $22,000 plus argument for punitive damages.

ECF Dkt. #24 at 4.

Before 30 days passed, Wells Fargo and Bank of America together filed a Motion to Extend Deadline Before Closing of Case ("Motion to Extend") for the stated purpose of allowing settlement negotiations with the Trustee to continue with respect to the TPP Claims – with the potential for payout to the Goldsteins' unsecured creditors. The Goldsteins promptly filed opposition. In their opposition, the Goldsteins argued that the case should not be allowed to remain open unless the Trustee filed a motion to sell and that no offer to purchase the TPP Claims then existed. They also argued that determining whether the TPP Claims constituted prepetition or postpetition claims might be problematic, because although events on which the TPP

Claims were based "started pre-petition," the law "allowing" suit on such events "did not exist" until two years postpetition. ECF Dkt. #28 at 4.

At the hearing on the Motion to Extend, the Goldsteins took a firmer position and asserted that the TPP Claims were postpetition claims.[7] The bankruptcy court continued the hearing to coincide with a hearing it then scheduled on a motion to be filed by the Trustee, either to compromise under Rule 9019 or to sell under § 363.

**D. The Trustee's agreement with Wells Fargo and motion to compromise controversy, or alternatively, for order authorizing sale**

The Trustee subsequently entered into a written agreement with Wells Fargo ("Agreement") and filed it as an exhibit to her motion to compromise or sell the TPP Claims ("Motion").

**1. The terms of the Agreement**

Pursuant to the Agreement, which was expressly made subject to bankruptcy court approval pursuant to a motion under Rule 9019, Wells Fargo[8] agreed to pay the Trustee $60,000 in full settlement of the TPP Claims. As an essential term of the

---

[7] The Goldsteins did not provide in their excerpts of record a copy of the transcript of the hearing on the Motion to Extend, apparently because it was not available for download. We have exercised our discretion to review independently the hearing transcript electronically filed on the bankruptcy case docket. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989).

[8] Notwithstanding that Bank of America was not party to the Agreement, as an essential term of the Agreement, the Trustee agreed that all releases provided therein also released Bank of America.

-7-

Agreement, Wells Fargo's obligation to pay the $60,000 was made subject to entry of a final order specifically finding that the TPP Claims were property of the bankruptcy estate and not property of the Goldsteins as individuals.[9] In addition, the parties to the Agreement agreed that to the extent the bankruptcy court ruled that sale of the TPP Claims under § 363 was the proper procedure, approval under § 363 also satisfied the Trustee's obligation to obtain court approval.

## 2. The Motion

The Trustee moved for approval of the Agreement as a compromise of controversy under Rule 9019, or alternatively, as a sale of estate assets, subject to overbid procedures, under § 363(b) and (m) and Rule 6004. Under both legal theories, the Trustee requested that the bankruptcy court make the specific finding that the TPP Claims were prepetition assets.

In support of her argument that the TPP Claims were prepetition assets,[10] the Trustee argued that: (1) the TPP Claims

---

[9] The Agreement also provided that the order would not be final for purposes of the Agreement until it was no longer subject to appeal. In light of this provision of the Agreement, the appeal is not moot.

[10] Because the Goldsteins appeal only from the bankruptcy court's finding that the TPP Claims are prepetition assets of the estate, and do not argue that the bankruptcy court otherwise erred in its Rule 9019 or § 363 holdings, we do not review the Trustee's legal and factual support for the Rule 9019 and § 363 rulings here. The Goldsteins based their opposition to the Motion solely on the ground that the Trustee lacked authority to sell or compromise the TPP Claims because they were not property of the estate. We note, however, that the Trustee cited the appropriate legal authority under both provisions and the bankruptcy court found that the Trustee otherwise presented a sufficient record for the ultimate holdings.

-8-

were based solely on prepetition facts and thus accrued prepetition; and (2) contrary to the Goldsteins' argument, the discovery rule, which is applicable for purposes of statutes of limitations analysis, did not postpone accrual for ownership purposes under the bankruptcy analysis.[11] The Trustee also argued that the decision in West v. JPMorgan Chase Bank, N.A., 214 Cal. App. 4th 780 (2013), which the Goldsteins argued constituted a postpetition change of law that gave rise to their TPP Claims postpetition, merely strengthened the Goldsteins' claims – it did not create them. Trustee asserted that no binding case law existed prepetition that prohibited the Goldsteins from bringing the TPP Claims before they filed bankruptcy and, thus, that they were prepetition assets of the estate.

### 3. The Goldsteins' Opposition

The Goldsteins opposed the Motion based on two primary arguments. First, they argued that factually none of the TPP Claims were "complete" until Wells Fargo put into writing its denial of a permanent HAMP modification two weeks after the Goldsteins filed for bankruptcy. Because Wells Fargo never gave the Goldsteins notice that it was denying their HAMP loan modification application, they argue, the TPP Claims could not have arisen any earlier – and thus they were postpetition

---

[11] Trustee also argued that the Goldsteins admitted in the SAC that they were aware of Wells Fargo's breach in May 2010, three months before they filed bankruptcy, and that they filed bankruptcy to stop foreclosure, which would not have been necessary but for the denial of the modification.

-9-

claims.[12]

Second, the Goldsteins asserted that at the time they filed for bankruptcy, neither federal nor state case law "allowed borrowers to sue their lenders for refusing to give the borrower a HAMP loan modification, despite the borrower having fully performed a HAMP TPP." Opposition to Motion, ECF Dkt. #50 at 23. The Goldsteins cited two decisions[13] in which the respective courts, when presented with similar factual scenarios and causes of action, determined that no contracts or executed agreements existed between the subject borrowers and lenders to support the borrowers' actions. The Goldsteins argued that this state of the law changed in 2012 and 2013, with three decisions. First, the Seventh Circuit issued its opinion in Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547 (7th Cir. 2012), holding that a HAMP TPP was an enforceable contract that "could give rise to

_____

[12] As part of the support for this factual argument, the Goldsteins filed under seal with the bankruptcy court transcriptions of certain telephone conversations between the Goldsteins and representatives of Wells Fargo in which Wells Fargo repeatedly told the Goldsteins that they should continue making the TPP payments while their modification was under consideration – not disclosing that, as later determined, Wells Fargo denied the modification in February 2010 (six months prior to the petition date). They also sought authority to file these transcripts under seal as part of the record on appeal. This panel denied the request to file under seal, without prejudice, by order entered January 22, 2015. The parties thereafter jointly filed a motion to allow substitution of redacted copies of the transcripts (the "Motion to Substitute"). This panel granted the Motion to Substitute by order entered February 25, 2015.

[13] The Goldsteins cited Nungaray v. Litton Loan Servicing, LP, 200 Cal. App. 4th 1499 (2011), and Grill v. BAC Home Loans Servicing, LP, 2011 WL 127891 (E.D. Cal. Jan. 14, 2011). We note that both cited decisions post-date the petition date but pre-date the Goldsteins' initiation of the State Court Action.

-10-

claims against banks, for breach of contract, misrepresentation and fraud." ECF Dkt. 50 at 25. Then the California court of appeal in West v. JPMorgan Chase Bank and the Ninth Circuit in Corvello v. Wells Fargo Bank, N.A. adopted the Wigod reasoning.

The Goldsteins argued that, as a matter of law, their right to remedy under the TPP Claims was created by the postpetition decisional authority in Wigod, West, and Corvello, and not before. They contended, therefore, that the TPP Claims necessarily constituted postpetition claims.

### 4. The bankruptcy court's ruling

The bankruptcy court ruled orally after hearing argument on the Motion and held that all of the TPP Claims arose prepetition and were property of the estate. The bankruptcy court found that:

> to the extent there was any fraud, any inducement, any breach of contract, any promissory estoppel claim, that breach would have occurred after the debtors performed and, as debtors['] counsel in her last comments said, noted the full performance by the debtors took place in early 2010 after the debtors had made their three payments. Once the debtors made those three payments and otherwise complied with their obligations under the HAMP modification, the fact that they were not granted a permanent modification, that constitutes the breach. There's no question that that was before the bankruptcy case was filed.

Hr'g Tr. (June 26, 2014) at 53:25-54:11. The bankruptcy court found that the facts giving rise to the fraud claim also arose prepetition, as the Goldsteins themselves alleged in the SAC that they learned that the denial was in February 2010 and they filed bankruptcy in August 2010 because of the denial.

The bankruptcy court also stated that it was not persuaded that "because there were recent cases with respect specifically

-11-

to a cause of action based on HAMP modifications that there was no law or no legal right for debtors to have filed a cause of action prior to the bankruptcy case." Hr'g Tr. (June 26, 2014) at 55:10-14. The bankruptcy court reasoned that the lack of published cases prepetition was in part due to the fact that HAMP procedures were relatively new. Rather than focusing on the existence of some conflicting legal precedent, which the bankruptcy court noted had no "impact on the date that a claim arises for purposes of when that claim accrues," Hr'g Tr. (June 26, 2014) at 56:12-13, the bankruptcy court relied on the fact that prepetition there was "no controlling law saying that the debtors had no right to file a cause of action." Hr'g Tr. (June 26, 2014) at 55:21-22. Thus, the bankruptcy court found that the TPP Claims were "assets that the Trustee is entitled to, and in fact obligated to administer." Hr'g Tr. (June 26, 2014) at 56:20-21.

The Goldsteins appealed from the bankruptcy court's decision the same day the bankruptcy court entered its order.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (N). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

Did the bankruptcy court err when it determined that the TPP Claims were property of the bankruptcy estate?

**STANDARD OF REVIEW**

Whether property is property of the estate is a question of law reviewed de novo. Mwangi v. Wells Fargo Bank, N.A. (In re

-12-

Mwangi), 432 B.R. 812, 818 (9th Cir. BAP 2010) (citing White v. Brown (In re White), 389 B.R. 693, 698 (9th Cir. BAP 2008)).

**DISCUSSION**

On appeal, the Goldsteins make the same primary arguments, pro se,[14] as their counsel argued to the bankruptcy court.[15] First, they contend that none of the TPP Claims were complete, for accrual purposes, until the Goldsteins learned postpetition that Wells Fargo denied them a permanent loan modification – thereby damaging them. Second, they assert that no published decisional authority existed prepetition that supported borrowers' actions against their lenders based on similar factual scenarios and, thus, that their right to remedy did not arise until postpetition. Both arguments are unavailing.

**A. Property of the estate**

Section 541(a)(1) of the Bankruptcy Code defines "property of the estate" to include "all legal or equitable interests of the debtor in property as of the commencement of the case."[16] Legal causes of action are included within the broad scope of

---

[14] Mr. Goldstein, however, is himself an attorney.

[15] In their opening appeal brief, however, the Goldsteins for the first time also attempt to argue that Wells Fargo had unclean hands because of its alleged fraud and that Wells Fargo should be judicially estopped from taking allegedly inconsistent positions regarding whether a contract existed and whether Wells Fargo breached it. We decline to consider either of these newly raised arguments in this ap peal. See Padgett v. Wright, 587 F.3d 983, 985 n.2 (9th Cir. 2009) (per curiam); and Scovis v. Henrichsen (In re Scovis), 249 F.3d 975, 984 (9th Cir. 2001) (refusing to consider issue raised for the first time on appeal absent exceptional circumstances).

[16] Section 541(b) lists exclusions from this broad definition, none of which are asserted to be applicable here.

-13-

§ 541. <u>Sierra Switchboard Co. v. Westinghouse Elec. Corp.</u>, 789 F.2d 705, 707 (9th Cir. 1986) (citing <u>United States v. Whiting Pools, Inc.</u>, 462 U.S. 198, 205 & n.9 (1983)). This includes prepetition tort causes of action, <u>id.</u>, as well as prepetition causes of action based on contract, <u>Rau v. Ryerson (In re Ryerson)</u>, 739 F.2d 1423, 1425 (9th Cir. 1984). The question presented in this appeal is whether the tort- and contract-based causes of action comprising the TPP Claims accrued, for bankruptcy purposes, prior to the Goldsteins' petition date and, thus, constitute property of the estate. <u>See</u> <u>Cusano v. Klein</u>, 264 F.3d 936, 947 (9th Cir. 2001). The bankruptcy court concluded they did; we agree.

**B.   The TPP Claims accrued prepetition**.

"To determine when a cause of action accrues, and therefore whether it accrued pre-bankruptcy and is an estate asset, the Court looks to state law." <u>Boland v. Crum (In re Brown)</u>, 363 B.R. 591, 605 (Bankr. D. Mont. 2007) (citing <u>Cusano</u>). "It is important, however, to distinguish principles of accrual from principles of discovery and tolling, which may cause the statute of limitations to begin to run after accrual has occurred for purposes of ownership in a bankruptcy proceeding." <u>Cusano</u>, 264 F.3d at 947.

In California, "generally, a cause of action accrues and the statute of limitation begins to run when a suit may be maintained. Ordinarily this is when the wrongful act is done and the obligation or the liability arises, but it does not accrue until the party owning it is entitled to begin and prosecute an action thereon. In other words, a cause of action

-14-

accrues upon the occurrence of the last element essential to the cause of action." Howard Jarvis Taxpayers Assn. v. City of La Habra, 25 Cal. 4th 809, 815 (2001) (citations and internal quotation marks omitted). Therefore, if a claim "could have been brought," it has accrued. Cusano, 264 F.3d at 947. Here, we determine, as did the bankruptcy court, that all of the TPP Claims could have been brought prepetition.

Under the terms of the TPP, Wells Fargo agreed to provide the Goldsteins with a permanent loan modification if the Goldsteins complied with the TPP requirements or to notify them if they did not qualify after making the three TPP payments. The Goldsteins made the third payment on January 1, 2010. Wells Fargo then was required to take one of two possible actions; it did nothing. Thus, at that prepetition point in time, the Goldsteins could have brought their TPP Claims. Wells Fargo did not act in compliance with its alleged representations, promises, or contractual agreements despite the Goldsteins' full performance. The Goldsteins' four additional payments arguably increased their damages claim, but did not delay the accrual of the TPP Claims themselves.

Nor were the Goldsteins delayed in their ability to bring the TPP Claims due to their lack of receipt of a written denial of a permanent loan modification or because they may not have learned until sometime postpetition that Wells Fargo denied the permanent loan modification in February 2010.[17] Instead, because

_____

[17] The Goldsteins assign error to the bankruptcy court's acceptance as fact of the Goldsteins' allegation contained in
(continued...)

Wells Fargo took neither of the HAMP-required alternative actions – and there is no question that the Goldsteins admittedly knew they did not do so – the Goldsteins could have brought the TPP Claims before they filed bankruptcy. As of the commencement of the case, if the TPP Claims could have been brought, they accrued and became part of the bankruptcy estate. See In re Brown, 363 B.R. at 605. We determine, as a matter of law, that the TPP Claims accrued prepetition and therefore conclude that the bankruptcy court did not err when it held that the TPP Claims were property of the estate.

**C. The Goldsteins were not prohibited from bringing the TPP Claims prepetition even if some contrary non-binding precedent existed or supportive precedent was lacking at that time.**

The Goldsteins also argue that because they never received a signed copy of the TPP, as required by its terms prior to it taking effect, they had no agreement or contract with Wells Fargo until such time as the Seventh Circuit's reasoning and decision in Wigod was adopted in California (West) and by the Ninth Circuit (Corvello).[18] And the Goldsteins contend that the

_____

[17](...continued)
their SAC that they learned in May 2010 of Wells Fargo's denial of the permanent loan modification in February 2010. The Goldsteins contend that their allegation was a mere misstatement that they have since corrected. Because we determine that the TPP Claims accrued prepetition when Wells Fargo did not give notice of denial or provide the permanent loan modification, which neither side disputes, we determine that even if the bankruptcy court erred by relying on the SAC allegation, it would be harmless error.

[18] In Corvello, the Ninth Circuit specifically found that such a provision in a TPP, drafted by the bank, did not deprive
(continued...)

-16-

state of the law prepetition, before the <u>Wigod</u>, <u>West</u>, and <u>Corvello</u> decisions, in effect, prevented them from bringing the TPP Claims.

In their arguments, the Goldsteins appear to miss the point that in all three of these decisions, the courts reached their ultimate conclusions regarding the viability of the state common law claims at issue through application of **existing** state law; and their analysis of contractual obligations of banks under HAMP was based on review of HAMP provisions and applicable Treasury guidelines. See <u>Corvello</u>, 728 F.3d at 880 (finding Treasury Supplemental Directive 09-01 to be the controlling Treasury guideline for the process of applying for and receiving a permanent modification); <u>Bushell v. JPMorgan Chase Bank, N.A.</u>, 220 Cal. App. 4th 915, 923 (2013) (lenders "must perform HAMP loan modifications in accordance with Treasury regulations," such as Supplemental Directive 09-01, issued in April 2009, delineating HAMP's eligibility requirements and modification procedures).

These courts did not create new legal rights. They interpreted the respective borrowers' rights under state laws then in effect to consider the impact of HAMP provisions and related agreements. The plaintiffs in each case faced the same state of the law that the Goldsteins complain they faced prepetition, but they persevered and eventually persuaded the

---

[18](...continued)
borrowers of the benefits of their agreement. <u>Corvello</u>, 728 F.3d at 884-85.

-17-

reviewing courts to rule in their favor.[19]  The Goldsteins, arguably, might have done the same.[20]

The Goldsteins rely on Drewes v. Vote (In re Vote), 261 B.R. 439 (8th Cir. BAP 2001), and Sliney v. Battley (In re Schmitz), 270 F.3d 1254 (9th Cir. 2001), to support their arguments.  Both decisions are factually and legally distinguishable.  In both cases, the rights under review, crop disaster assistance and fishing rights, respectively, were created postpetition by legislation enacted postpetition.  In re Vote, 261 B.R. at 442; In re Schmitz, 270 F.3d at 1255-56.  Here, the TPP Claims rely on California common law regarding fraud, promissory estoppel, and contract as it existed prepetition, interfacing with the HAMP provisions enacted in

---

[19]  The eventually successful plaintiffs in Wigod first filed their complaint in April, 2010 in district court; received their unfavorable ruling in January 2011; but succeeded before the Seventh Circuit in March 2012.  See Wigod v. Wells Fargo Bank, N.A., 2011 U.S. Dist. LEXIS 7314 (N.D. Ill., Jan. 25, 2011).  The plaintiff in West was encountering problems with her request for HAMP modification in late 2009 and early 2010, and was foreclosed in May 2010.  West v. JPMorgan Chase Bank, N.A., 214 Cal. App. 4th at 789-90.  She filed her initial complaint in November 2010 and suffered an unfavorable judgment in January 2012, before prevailing on appeal in March 2013.  Id. at 791.  Similarly, the plaintiff in Corvello first filed his complaint in November 2010 to address claims related to a HAMP temporary payment plan that started in the summer of 2009.  Corvello, 728 F.3d at 881; Complaint, Corvello v. Wells Fargo Bank, N.A., No. 3:10-cv-05072-VC (N.D. Cal. Nov. 9, 2010), ECF Dkt. #1.

[20]  The court in Corvello acknowledged that many state and federal courts had dealt with similar factual circumstances, citing Sutcliffe v. Wells Fargo Bank, N.A., 283 F.R.D. 533, 549-50 (N.D. Cal. 2012), for its collection of cases.  We note that in Sutcliffe, among the cases it collected, were a number of cases where courts held in 2010 and 2011 that a TPP is an enforceable agreement, at least for purposes of surviving a Civil Rule 12(b)(6) motion.  283 F.R.D. at 549-50.

-18-

2009. The Goldsteins' ability to file the TPP Claims did not require enactment of new legislation. The TPP Claims involved interpretation of the legal significance of the facts as they existed prepetition. The developing case law arguably assisted the Goldsteins' likelihood of recovery on the TPP Claims as it interpreted what HAMP required of the banks in a manner favorable to the Goldsteins; it did not create a new right.[21] The Goldsteins cite no legal authority to support their contention that judicial interpretation of the HAMP provisions resulted in new legal rights that the Goldsteins did not have as of the commencement of the bankruptcy case, and we know of none.

## CONCLUSION

Based on the foregoing, we AFFIRM.

---

[21] It bears mentioning here that if any of the statute of limitations periods applicable to the causes of action comprising the TPP Claims had run before the Wigod, West, and Corvello favorable opinions were published, the subsequent favorable decisions could not revive the time-barred causes of action. See Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1116 (1988) ("[A] change in the law, either by statute or by case law, does not revive claims otherwise barred by the statute of limitations.").

-19-